UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IVAN ABNER CANTU, | § | CIVIL ACTION |
| | § | |
| Petitioner, | § | No. 2:06CV166 |
| | § | |
| v. | § | |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Institutional Division, | § | |
| | § | |
| Respondent. | § | |

## SUPPLEMENT TO MEMORANDUM OF LAW
## IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. § 2254

The Petitioner, Ivan Abner Cantu, through court-appointed counsel, files this Supplement to Memorandum of Law in Support of Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254.

**Mr. Cantu's claim challenging trial counsel's failure to investigate and present evidence of innocence is not procedurally barred and should be considered on the merits.**

On January 17, 2007, Mr. Cantu, through previous court-appointed counsel, filed in this Court his petition for writ of habeas corpus and original memorandum of law in support of that petition. DE[1] 9, 10. In that petition and memorandum, Mr. Cantu argued, inter alia, that his trial attorneys had rendered ineffective assistance by failing to investigate his actual innocence. *See* DE 10 at 38. Now, through newly appointed counsel, Mr. Cantu files this supplement to that memorandum. This claim is not procedurally defaulted, as the Director urges, because a state court remedy remains available. Therefore, the Court should stay and abate these proceedings to allow Mr. Cantu to raise the claim in state court.

---

[1] "DE" refers to the numbered Docket Entries in the instant lawsuit, followed by citation to page numbers, if applicable.

**A.    This claim is unexhausted, but it is not procedurally barred because a state court remedy remains.**

The Director urges that this claim is procedurally defaulted because Mr. Cantu failed to raise the claim in state court and would be unable to do so now.[2] DE 12 at 29. Mr. Cantu concedes that his state habeas counsel did not raise this claim in his state habeas corpus application, the first opportunity he would have had to raise such a claim. But, contrary to the Director's averments, a state court remedy remains. Therefore, while the claim is unexhausted and, pursuant to interests of comity and federalism that govern federal habeas corpus actions, must be passed upon first by the state courts, the claim is not procedurally defaulted. *See Rose v. Lundy*, 455 U.S. 509, 518-519 (1982).

The federal habeas corpus statute bars the granting of habeas corpus relief "unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275-76 (1971). But because "[t]his requirement . . . refers only to remedies still available at the time of the federal petition," *Engle v. Isaac*, 456 U.S. 107, 125, n.28 (1982), it is satisfied "if it is clear that [the petitioner's] claims are now procedurally barred under [state] law." *Castille v. Peoples*, 489 U.S. 346, 351 (1989). In that case, however, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). *See also Coleman v. Thompson*, 501 U.S. 722, 744-751 (1991). It is on this basis that the Director urges procedural default.

---

[2] Likely anticipating the Director's argument, previous counsel urged in his original memorandum that the procedural default of this claim be excused based upon the deficient performance of state habeas counsel, conceding, however, that Fifth Circuit precedent does not support the argument. DE 10 at 38, n.7.

However, "[i]f it appears that the petitioner still may have a right under state law to obtain relief, the federal court will either abate or dismiss the application in order to allow the applicant to present his unexhausted claims in a successive petition to that court." *King v. Dretke*, No. 1:01CV435, 2006 WL 887488, at *6 (E.D.Tex. Mar. 29, 2006) (unpublished order) (citing *Rhines v. Weber*, 544 U.S. 269 (2005)). *See also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.").

Here, Mr. Cantu has the right, under state law, to raise his claim that trial counsel rendered ineffective assistance by failing to investigate and present evidence of his innocence at trial. Specifically, this claim falls within an exception to Texas' statutory prohibition on successive applications.

> If a subsequent applicant for writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains specific facts establishing that:
>
> \* \* \*
>
> (2) by a preponderance of the evidence, but for the violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

Tex. Code Crim. Proc. Ann. art. 11.071 §5(a)(2). Significantly, this provision does not require that the claim be based on newly discovered evidence or that the claim could not have been raised in the first application. *See* art. 11.071 §5(a) (containing three sections, each presented in disjunctive, only first of which requires previous unavailability of claim). Furthermore, any ambiguity regarding whether Mr. Cantu's claim falls within the ambit of the exception must be resolved in favor of stay and abeyance.

> In determining whether to stay a federal application and allow an applicant to return to state court[], the federal court does not decide whether the [claim] actually meets the state law standard; instead, it determines only whether it is entirely clear that the Texas courts would find that the [claim] does not meet that standard. Absent such

> clarity, the federal court must allow the state court to determine whether the [claim] meets the state law requirement.

*King v. Dretke*, 2006 WL 887488, at *9. Therefore, unless it is entirely clear to this Court that the state court would not review the merits of Mr. Cantu's unexhausted claim, the claim cannot be dismissed as procedurally barred.

> **B.    The petition should be stayed and held in abeyance to allow Mr. Cantu to present his claim in state court.**

While this unexhausted claim cannot be dismissed with prejudice as procedurally defaulted, the AEDPA clearly precludes this Court from granting relief on an unexhausted claim. 28 U.S.C. § 2254(b)(1)(A). On the other hand, in light of the AEDPA's one-year statute of limitations, it would be inappropriate to dismiss the petition "without prejudice" to permit exhaustion, which would result in Mr. Cantu's entire petition being time-barred upon return to federal court. *Cf. Rose v. Lundy*, 455 U.S. at 522 (pre-AEDPA precedent directing federal courts to dismiss without prejudice petitions containing unexhausted claims to allow return to state court); *see Slack v. McDaniel*, 529 U.S. 473, 486 (2000) (noting that dismissal without prejudice under *Lundy* "contemplated that the prisoner could return to federal court after the requisite exhaustion"). Indeed, the Supreme Court has determined that the more appropriate course of action in such a case is for the district court to stay the federal petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims; once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court. *See Rhines v Weber*, 544 U.S. at 275-276. Mr. Cantu asks that this Court do the same in his case – stay the petition and hold it in abeyance to permit him to file a successive habeas application in state court.

> **C.    Alternatively, state habeas counsel's ineffectiveness excuses the procedural default.**

But in the event this Court determines that there is no remaining state-court remedy and, therefore, a procedural default arises from Mr. Cantu's failure to raise this claim in his initial state habeas corpus application, Mr. Cantu reurges the argument contained in his original memorandum of law that his state habeas counsel's ineffectiveness constitutes cause sufficient to excuse that default.[3] *See* DE 10 at 38, n.7. Where, as here, the allegedly defaulted claim – ineffective assistance of trial counsel – could not have been raised until state habeas corpus proceedings, the Fourteenth Amendment guarantees of due process and equal protection demand that counsel at that stage perform effectively. And, therefore, counsel's failure to raise the claim gives rise to cause sufficient to excuse the resulting procedural default.

In *Douglas v. California*, 372 U.S. 353 (1963), the Supreme Court held that an indigent criminal defendant has a right to appointed counsel in his first appeal as of right in state court. The Court held in *Evitts v. Lucey*, 469 U.S. 387, 396 (1985), that this right encompasses a right to effective assistance of counsel for all criminal defendants in their first appeal as of right. The Court based its holding in *Douglas* on that "equality demanded by the Fourteenth Amendment." 372 U.S. at 358. Recognizing that "[a]bsolute equality is not required," the Court nonetheless held that "where the merits of *the one and only appeal* an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line as been drawn between rich and poor." 372 U.S. at 357 (emphasis in original).

Here, Mr. Cantu's state habeas corpus application was, in fact, "*the one and only appeal*" available to challenge his trial attorneys' performance. *See Thompson v. State*, 9 S.W.3d 808, 813 n.5 (Tex. Crim. App. 1999). But court-appointed state habeas counsel Jan Hemphill utterly failed to provide reasonably adequate assistance of counsel during state habeas corpus proceedings.

---

[3] Mr Cantu acknowledges that Fifth Circuit precedent does not support this argument, but raises it nonetheless for preservation purposes. *See Martinez v. Johnson*, 255 F.3d 299, 245 (5th Cir. 2001); *Ruiz v. Quarterman*, 460 F.3d 638, 643-644 (5th Cir. 2006).

Ms. Hemphill never met with Mr. Cantu to consult with him regarding what claims may have been available to raise in state collateral review. She failed to respond to Mr. Cantu's repeated requests to communicate with her before the state habeas application was filed. In fact, Ms. Hemphill met with her client only once during state habeas corpus proceedings, and that was to discuss having her removed as counsel (which did not happen). Ultimately, Ms. Hemphill filed a state habeas application without ever having discussed it with her client – and the application only challenged the death sentence. The application omitted several potentially meritorious claims, including the claim that trial counsel rendered ineffective assistance by failing to investigate and present evidence of Mr. Cantu's actual innocence of the crime. This omission amounted to deficient performance; and absent such omission, there is a reasonable likelihood Mr. Cantu would have been granted relief.

Therefore, Mr. Cantu was, in fact, deprived of the effective assistance of counsel in his "one and only appeal" available to challenge trial counsel's performance. Such ineffective assistance should constitute cause sufficient to excuse the procedural default of the underlying claim.

**D.     Rather than investigate potential witnesses and evidence which would have supported Mr. Cantu's innocence or otherwise effectively challenge the State's case, trial counsel conceded Mr. Cantu's guilt before the jury, thereby rendering constitutionally ineffective assistance.**

Mr. Cantu's trial attorneys – Matt Goeller and Don High – rendered constitutionally ineffective assistance by failing to conduct any significant investigation into the facts of the crime for which their client was accused. They failed to discover and/or effectively utilize several critical pieces of evidence that supported Mr. Cantu's unwavering insistence that he had no involvement in the murders of his cousin and his counsel's fiancee. In fact, during closing argument at the guilt-innocence phase of trial, counsel repeatedly conceded Mr. Cantu's culpability for the murders.

As an initial matter, the Director's reliance on a contention in Mr. Goeller's state habeas affidavit that Mr. Cantu in fact admitted his guilt to trial counsel is unsound. *See* DE 12 at 30-31. First, the affidavit was submitted in response to Mr. Cantu's state habeas claim that counsel rendered ineffective assistance *at the sentencing phase*. SHCR[4] at 156, 158-159. Therefore, Mr. Goeller's claim that Mr. Cantu admitted guilt clearly exceeded the scope of the inquiry; the claim was gratuitous and utterly self-serving. Furthermore, due to state habeas counsel's complete failure to communicate effectively with Mr. Cantu, *see* Section C. *supra*, Mr. Cantu was never advised that trial counsel had even submitted an affidavit, much less that the affidavit contained a claim that he had admitted guilt. Mr. Cantu did not learn of the affidavit until he received a copy of it attached as an appendix to his federal habeas corpus petition. Thus, he has never had an opportunity to rebut the claim by trial counsel that he admitted his guilt, a claim that he emphatically denies. And perhaps most significantly, this portion of Mr. Goeller's affidavit was neither specifically credited nor relied upon by the state habeas judge in its findings of fact and conclusions of law. SHCR at 187-192. Under these circumstances, it would be improper for this Court to credit the claim and rely upon it as a basis for denying this claim of ineffective assistance of counsel.

In reviewing claims of ineffective assistance of counsel, courts employ the two-prong inquiry articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong requires the defendant to demonstrate that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 688. To satisfy this prong, known as the deficient-performance prong, the defendant must identify the acts or omissions of counsel alleged to be ineffective and affirmatively prove that they fell below the

---

[4] "SHCR" refers to the State Habeas Clerk's Record – the documents filed with clerk's office during the course of Mr. Cantu's state habeas corpus proceeding – followed by citation to page numbers.

professional norm of reasonableness. The second prong requires the defendant to demonstrate that he was prejudiced by the deficient performance of his attorney. To establish prejudice, a defendant must prove that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S at 694.

Trial counsel failed in several respects to effectively counter the State's case at the guilt-innocence phase of trial. Trial counsel failed to scrutinize telephone records admitted into evidence at trial showing that a long-distance telephone call was made from Mr. Cantu's apartment at 8:37 p.m. on November 4. *See* SX 119; 37 RR 57. This evidence indicates that someone else had access to Mr. Cantu's apartment long after he and Amy Boettcher had left for Arkansas, supporting the conclusion that Mr. Cantu was framed by the rival drug dealers truly responsible for James Mosqueda's murder.

Likewise, trial counsel failed to cross-examine State's witnesses regarding toll tag records showing that James Mosqueda's Corvette was driven at 11:15 a.m. on November 4, possibly after Mr. Cantu and Amy Boettcher had left for Arkansas. *See* SX 117, 188; 37 RR 41-53; 36 RR 25 (Boettcher's testimony that they left for Arkansas sometime between 11 a.m. and noon on November 4). Amy Boettcher gave no explanation for this toll tag hit in her testimony; according to her testimony, the last time they drove the Corvette was about 6:30 that morning, when they arrived back at the apartment from downtown Dallas. 35 RR 158-159. At the very least, the discrepancy indicates that someone else besides Mr Cantu could have driven the Corvette before it was discovered by law enforcement on November 5 in the parking lot of Mr. Cantu's apartment complex,[5] again supporting the conclusion that Mr. Cantu was set up as the fall guy for a drug-business hit. But trial counsel failed to capitalize on these critical discrepancies in the

---

[5] Significantly, police conducting an emergency search of Mr. Cantu's apartment on the evening of November 4 did not see the victim's Corvette, which according to State's witnesses was found the next day parked in close proximity to Mr. Cantu's apartment.

State's case, discrepancies that would have seriously undermined the physical evidence relied upon by the State to corroborate the testimony of Amy Boettcher, who even the prosecutor described as a "doper" and a "lawbreaker[]" for whom he had no respect. 41 RR 55.

Trial counsel also failed to probe an obvious inconsistency between the testimony of two of the State's expert witnesses: medical examiner Dr. William Rohr and blood-spatter expert Paulette Sutton. Ms Sutton opined, based on her examination of *photos* of the crime scene (she did not actually view the crime scene), that Amy Kitchen had been kicked or punched in the face with enough force to spray a large amount of blood over the wall behind the bed. 37 RR 212-215. But Dr. Rohr, who performed autopsies on the victims' bodies, apparently found no evidence of any injuries to the victims apart from the gunshot wounds (aside from a small contusion on James Mosqueda's right shoulder). *See* SX 157, 158, 159, 160. But trial counsel did not even cross-examine Dr. Rohr, 37 RR 130, and his examination of Ms. Sutton consisted of about a page and a half and did not touch upon her testimony's inconsistency with the autopsy reports. 37 RR 228-229.[6]

Finally, to further aggravate their failure to effectively rebut the State's case, trial counsel stood in front of the jury during final argument at the guilt-innocence phase of trial and repeatedly conceded Mr. Cantu's complicity in the murders, arguing only that he was technically not guilty of capital murder. 41 RR 31 ("I didn't say he was innocent. I said he's not guilty of capital murder"), 33 ("I'm not saying he's innocent. He's not guilty of capital murder."), 43 ("there's

---

[6] Trial counsel also rendered deficient performance by failing to even interview Tawny Svihovec, Mr. Cantu's ex-girlfriend, at whose apartment police found the murder weapon and who apparently did not believe Mr. Cantu was involved in the murders (and who the State did not call as a witness); by failing to question State's witnesses regarding whether Mr. Cantu's face was swollen when they saw him during the early morning hours of November 4 in order to impeach Amy Boettcher's testimony to that effect; by failing to question State's witnesses who testified they saw Amy Boettcher wearing Amy Kitchen's engagement ring (on her left hand) regarding whether they also noticed any injury or swelling to that hand, which Amy Boettcher and other witnesses testified was the result of an assault by Mr. Cantu that took place the night before.

nothing I can tell you that the murder of Amy Kitchens (sic) was not intentional"), 45 ("He's not innocent, but he's not guilty of capital murder"), 46 ("you're not saying he's innocent. You're saying . . . it's not capital murder"). And the State was quick to capitalize on counsel's concessions in its own closing argument. *See* 41 RR 55 ("His own attorney concedes it. I mean, his own attorney argued – it's already made him the killer. . . . You look at the killing that Mr. Goeller has already conceded, and you find some way one of those cases is not intentional.").

It is true that an attorney's concession of his client's guilt at argument without that client's express consent does not automatically render counsel's performance deficient. *Florida v. Nixon*, 543 U.S. 175, 192 (2004). And in certain cases, it can be a valid strategic decision. *Id.* at 190-191. But for a trial strategy to be deemed reasonable, it must be based on a thorough investigation. *Wiggins v. Smith*, 539 U.S. 510, 521-522 (2003). Trial counsel's decision to concede guilt was not based on a truly thorough investigation. In a case such as this, where there is ample evidence to argue in support of your client's innocence, such a concession certainly falls below the bounds of reasonably professional assistance.

Trial counsel's many failures amount to deficient performance, and had trial counsel performed differently, there is a reasonable likelihood that at least one juror would have found a reasonable doubt as to Mr Cantu's guilt and voted "not guilty." Therefore, Mr Cantu is entitled to relief on his claim of ineffective assistance of counsel at the guilt-innocence phase of trial.

## CONCLUSION

For the foregoing reasons, petitioner Ivan Abner Cantu respectfully requests that the Court stay his pending federal habeas corpus petition and hold it in abeyance to permit him to file a successive state habeas corpus application raising his unexhausted claim of ineffective assistance of trial counsel at the guilt-innocence phase. Alternatively, if the Court finds the claim is procedurally defaulted, Mr. Cantu asks that the Court excuse the procedural default based on state habeas counsel's ineffectiveness, conduct an evidentiary hearing on this and other claims

contained in his original petition and memorandum of law, and grant habeas corpus relief regarding his conviction and sentence.

Respectfully submitted,

/s/
GENA BUNN
Attorney for Petitioner

**HOLMES & MOORE, P.L.L.C.**
P.O. Box 3267
Longview, Texas 75606
Telephone: (903) 758-2200
Fax No. (903) 758-7864

CERTIFICATE OF SERVICE

On this 22nd day of December 2008, I do certify that a true and correct copy of the foregoing Supplement to Memorandum of Law in Support of Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 was sent via electronic filing to counsel for the Director, Assistant Attorney General Thomas Merrill Jones.

/s/
GENA BUNN