IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IVAN A. CANTU, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 2:06-cv-166 |
| | § | (Death Penalty Case) |
| | § | U.S. Dist. Judge T. John Ward |
| NATHANIEL QUARTERMAN, | § | ECF |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
|     Respondent. | § | |

**RESPONDENT QUARTERMAN'S OPPOSITION TO PETITIONER'S
MOTION TO STAY AND ABATE WITH BRIEF IN SUPPORT**

Cantu was convicted of capital murder and sentenced to death for the shooting deaths of James Mosqueda and Amy Kitchens. He challenges his conviction and sentence through a petition for writ of habeas corpus. He now seeks to stay and abate these proceedings to return to state court to file a subsequent writ application alleging that trial counsel was ineffective. (Mot. To Stay Pet. And Hold in Abeyance Pending State Court Exhaustion ("Mot."); Docket # 21.) Under the federal standard, he is not entitled to such a stay and abatement.

Cantu alleges that he received ineffective assistance when at the guilt-innocence portion of trial, counsel failed to present substantial evidence of his innocence. (Supplement to Mem. of Law in Supp. of Pet. for Writ of Habeas

Corpus Pursuant to 28 U.S.C. § 2254 ("Br.") at 6–10; Docket # 22.) Cantu failed to raise this claim in his state habeas application. (SHCR[1] 14, 25, 43, 54, 58, 74, 79, 87.) Although he raised the claim in the federal habeas petition, he presented no argument or evidence suggesting actual innocence. Indeed, he said only that he would submit the evidence to this Court when it became available. (Mem. of Law In Supp. of Movant's Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Mem.") at 38; Docket # 10.)

After his first federal habeas counsel withdrew (Docket # 19), and after new counsel was appointed (Docket # 20), only then did Cantu seek to stay and abate proceedings. He now alleges that even though he sought state habeas relief unsuccessfully and failed to raise this claim, he has a state remedy available. (Mot. at 3.) He wishes to return to state court to avail himself of that remedy. (*Id.* at 4.)

When a federal habeas petitioner files a mixed petition—a petition containing claims that have been presented to state court and claims that have not been presented to state court—the federal court may in some circumstances stay proceedings to allow him to return to state court to present the hitherto unpresented claims. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005). The federal

---

[1] "SHCR" refers to the record in the petitioner's state habeas application, *Ex parte Cantu*, Application No. 63,624-01, followed by the page number.

court should stay and abate proceedings only (1) if the petitioner's failure to seek state relief was due to good cause, (2) where the claims have merit, and (3) there is no indication that the petitioner was dilatory. *See id.* at 278. This court should not stay and abate proceedings

I.   Cantu Shows No Good-Cause for Not Raising the Claim in State Court.

Cantu shows no good cause for failing to present the claim to the state court. He alleges only that state habeas counsel failed to present the claim. (Br. at 8–10.) Although the Supreme Court has not defined "good cause" sufficient to justify a stay and abatement, *see Rhines*, 544 U.S. at 277, the Court suggests that if a petitioner acts in good faith, his reasonable confusion about state law may constitute good cause. *See Pace v. DiGuglielmo*, 544 U.S. 408, 416–17 (2005). For example, where a petitioner makes a good faith effort to comply with state filing requirements but makes a reasonable error in filing his state postconviction pleading and learns only later that the filing was ineffective and did not toll the running of the federal limitation period, that reasonable confusion could constitute "good cause." *See id.*

Cantu's failures reflect neither good faith nor reason. Cantu knew before and during trial that his defense was not based on actual innocence. He knew during state habeas proceedings what the trial strategy had been. He does not

show that he made a good faith effort to advance the claim. Nor does he show that the failure to advance the claim arose from a reasonable error or confusion.

One might presume that "good cause" requires more than negligence or an after-the-fact disagreement between the client and counsel about trial or postconviction strategy. But Cantu fails to offer any explanation about his or his state habeas counsel's failure to advance his claim. Indeed, even if the Court assumes that Cantu wished to raise the claim and counsel refused, counsel's decision may have been reasonable. Cantu offers nothing to this Court, and presumably offered nothing to counsel, suggesting that such a claim had merit. *Cf. Jones v. Barnes*, 463 U.S. 745, 745 (1983) (stating that on appeal, attorney need not argue every conceivable issue, especially when some issues may be without merit; attorney has professional duty to choose among the potential issues using his judgment as to their merits and according to his tactical approach); *Hooks v. Roberts*, 480 F.2d 1196, 1198 (5th Cir. 1973) (stating that appellate counsel not required to consult with his client about the legal issues to be presented on appeal).

## II. Cantu Has Been and Remains Dilatory in Presenting the Claim.

Cantu has been and remains dilatory in presenting his claim. He alleges that counsel was ineffective for not investigating his actual innocence. But before state court and before this court, he has yet to offer any evidence of his

actual innocence.  In his brief accompanying this motion, he cites what he alleges are weaknesses in the State's trial evidence.  (Br. at 6–10.)  But the evidence cited and witnesses suggested do not support a claim of actual innocence.  And while Cantu alleges that in order to receive state court review, his actual-innocence evidence need not be newly discovered, *see* Tex. Code Crim. Proc. art. 11.071, § 5(a)(2) (Mot. at 3), he also alleges that evidence will be offered only on some future date after a yet-to-be-done investigation (Mem. at 38).  In short, he alleges that the evidence need not be new, but probably will be new.

But he has yet to offer any evidence from the one person who could offer the most probative testimony about his innocence:  Cantu himself.  He does not explain where he was during the killings.  He does not explain how his fingerprints got on the murder weapon.  He does not explain why he was driving Mosqueda's car after Mosqueda was murdered.  He does not explain why his girlfriend, Amy Boettcher, was wearing Amy Kitchen's ring after Kitchen had been murdered.  Although he had a privilege against self-incrimination during trial, where the State bears the burden of proof, in postconviction proceedings Cantu bears the burden.  *Lockett v. Anderson*, 230 F.3d 695, 707 (5th Cir. 2000).  If he wishes to challenge his conviction, he must speak up.  The time has past

when he could rely upon putting the State to its proof. He must take the lead. And he has yet to call his most valuable witness, himself.

### III. Cantu Promised Only Evidence That Will Be Discovered in the Future; For Such Evidence He Needs No Stay or Abatement.

Cantu alleges that to receive state-court review of this actual innocence claim, the evidence that he offers need not be new. (Mot. at 3.) *See* Tex. Code Crim. Proc. art. 11.071, § 5(a)(2). However true his argument may be, in his federal habeas petition and in this motion, Cantu offers no existing evidence. Hence, he suggests that the evidence supporting his ineffective-assistance claim will be offered "when such evidence becomes available." (Mem. at 38.) That is, the evidence will be newly discovered. But if the evidence will be newly discovered, he does not need a stay and abatement. He may after the evidence is discovered introduce the evidence and advance the claim both in state court, *see* Tex. Code Crim. Proc. art. 11.071, § 5(a)(1), and in federal court, *see* 28 U.S.C.§ 2244(b)(2)(B), in accordance with the federal statute of limitation, *see* § 2244(d)(1)(D). For such newly discovered evidence, the limitation clock has yet to begin ticking. *See id.* He needs a stay and abatement only if the evidence now exists. *See* Tex. Code Crim. Proc. art. 11071, § 5(a)(2). But this Court may presume the evidence does not yet exist or is yet to be discovered because Cantu has yet to offer the evidence or even allege facts. When he discovers the

evidence, he may then advance his claim. He need not now delay this proceeding.

## IV. Cantu's Ineffective-Assistance Claim Has No Merit.

Although this Court may not grant relief on a claim that has not been presented to state courts, this Court may deny relief on that unpresented claim. 28 U.S.C. § 2254(b)(2) (West 2008). The claim on its face has no merit and should be denied.

A defendant who wishes to demonstrate ineffective assistance of counsel must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The court must assess counsel's performance without the distorting effects of hindsight. *Id.* at 689. In determining the merits of a claim, this Court must be "highly deferential" to counsel's conduct. *Id.* This Court must presume that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 690. Cantu must overcome the presumption that under the circumstances the challenged action might be considered sound trial strategy. *See id.*

The reasonableness of counsel's actions may be determined or influenced by the defendant's own statements or actions. *Id.* at 291. Counsel's actions are

usually based on informed strategic choices made by the defendant and on information supplied by the defendant. *Id.*

A defendant who alleges that counsel failed to investigated his case must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *Lockett v. Anderson*, 230 F.3d 695, 713 (5th Cir. 2000); *see, e.g., Wiggins v. Smith*, 539 U.S. 510, 516–17 (2003) (reviewing proposed mitigating evidence that was not presented).

First, Cantu alleges that telephone records showed that a long-distance call was made from Cantu's apartment at 8:37 p.m. November 4. (Br. at 8.) But, he says, Amy Boettcher testified that she and Cantu left for Arkansas on November 4 sometime between 11 a.m. and noon. (*Id.*) Cantu alleges that the phone records show that someone other than Cantu and Boettcher had access to his apartment. (*Id.*) Cantu alleges that a third party's having access to his apartment supports his argument that he was framed by rival drug dealers. (*Id.*)

Second, he alleges that toll-road records show that Mosqueda's Corvette was being driven in the Dallas area at 11:15 a.m. November 4. (*Id.*) Boettcher testified that Cantu and she had driven the Corvette for the final time at 6:30 that morning. (*Id.*) This toll-road evidence supports his rival-drug-dealer theory, Cantu argues. (*Id.*)

Third, he alleges that the testimony of two state experts was contradictory. (*Id.* at 9.) Paulette Sutton, a blood-spatter expert, testified that based upon an examination of crime-scene photos, she thought that Amy Kitchen had been kicked or punched in the face with enough force to spray a large of amount of blood on the wall behind the bed. (*Id.*; 37 RR 212–15.) But Dr. William Rohr, the medical examiner who performed the autopsies, said that apart from the gunshot wounds and a contusion on Mosqueda's right shoulder, the victims were not otherwise injured. (Br. at 9; SX 157, 158, 159, 160.)

Fourth, trial counsel failed to interview Tawny Svihovec, Cantu's ex-girlfriend at whose apartment the murder weapon was found (Br. at 9 n.6); question prosecution witnesses about whether Cantu's face was, as was described by Boettcher, swollen in the early morning hours of November 4 (*id.*); question prosecution witnesses who saw Boettcher the night of November 3–4 whether her hand was, as a result of a November 3 assault by Cantu, swollen (*id.*).

Cantu offers nothing to suggest his ineffective-assistance claim has merit. He offers no evidence or alleges no fact suggesting his innocence. He leaves this Court is a poor position to evaluate the merits of his ineffective-assistance claim. *See Rhines*, 544 U.S. at 278. As noted above, he fails even to offer that evidence ready at hand, his own testimony.

Cantu simply argues that if he is given a new trial, he and new counsel will try a different strategy. This Court must avoid such second-guessing. *See Strickland*, 466 U.S. at 689. This Court must presume that counsel acted reasonably. *See id.* And the reasonableness of counsel's actions can be determined in part by what his client tells him. *See id.* at 690. Counsel testified that at one point Cantu acknowledged killing Mosqueda and Kitchen. (SHCR 158–59.) Even if it is presumed that Cantu now says otherwise, it was not Cantu's purported confession to counsel that proves problematic. Cantu confessed to, even bragged about, the killings to his girlfriend, Amy Boettcher.

As for Cantu's defensive theory, that he was framed by rival drug dealers, apart from his confession to Amy Boettcher, Cantu's fingerprints were found on the murder weapon. The murder weapon was found at the apartment of his old girlfriend, whom he had visited after the murder. The murder weapon was used to fire a bullet into the wall of Cantu's own apartment.

And the evidence that he cites in support of his theory is thin. For example, as for the phone call from his apartment at 8:37 p.m. November 4, the police were at the apartment at that time. (32 RR 84.) An officer testified that he saw Cantu's mother place a call using the phone in Cantu's apartment at about that time. (32 RR 84.)

As for the toll-road records, they show at most that Mosqueda's Corvette was driven northbound on the President George Bush Tollway through the Main Lane Plaza Two at 11:15 a.m. November 4. (37 RR 46, 52.) Boettcher testified that she and Cantu left for Arkansas on that day about noon. (35 RR 158.) The Corvette was found at Cantu's apartment complex (33 RR 60), which was within blocks of the toll plaza (50 RR SX 118), as was Mosqueda's apartment (31 RR 73). The evidence shows that Cantu could have driven the Corvette through the plaza at that time on that date.

As for the discrepancy between the testimony of the blood spatter expert and the medical examiner, defense counsel in fact noted the discrepancy for the jurors. (37 RR 227–28.) Whatever discrepancy was reflected by the experts' testimony, the testimony does not suggest Cantu's innocence.

As for Cantu's other allegation of counsel deficiencies, that is, counsel's failure to question Cantu's ex-girlfriend, Tawny Svihovec, and his failure to question witnesses about Cantu's swollen face and Boettcher's hand injury, Cantu does not show, or even allege, what the investigation and questioning would have revealed. *See Lockett*, 230 F.3d at 713.

As for Cantu's complaint about trial counsel's state habeas affidavit in which counsel averred that his client had confessed to him, Cantu misinterprets the record. (Br. at 6–7.) In state habeas proceedings, Cantu challenged his

counsel's punishment-stage performance. (SHCR 14.) Counsel responded by explaining the defense team's reluctance to subject Cantu to a mental-health examination. (SHCR 158.) Counsel noted that Cantu had given him differing versions of events. (SHCR 158–59.) One, Cantu had denied any knowledge or involvement in the murders; two, he said that his friends and a pizza-delivery man were conspiring to frame him; three, he acknowledged killing Mosqueda for stealing from him and killed Kitchen to eliminate a witness; and four, Mosqueda, Kitchen, and Boettcher conspired to brainwash him with the drug Rohypnol, and this brainwashing caused him to commit the murders. (SHCR 158–59.) Counsel relayed the various stories not for the proof of the matters asserted. Indeed, counsel admonished Cantu that counsel could not sponsor perjured testimony. (SHCR 159.) Counsel relayed the various stories to show Cantu's manipulation. (SHCR 159.) The defense team feared that a mental-health examination would reveal this manipulation and would harm the punishment-phase case. (SHCR 159.)

As for Cantu's inability to rebut trial counsel's affidavit (Br. at 7), the Director and this Court are waiting still. But it would not be unexpected that Cantu would controvert counsel's testimony. But even if this Court were to assume that Cantu did not confess his guilt to trial counsel, Cantu still offers no evidence of actual innocence that trial counsel could have advanced.

Even if counsel's deficiency is presumed, Cantu shows no prejudice. To show prejudice, he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Again, without that evidence of actual innocence that counsel neglected to discover, Cantu fails to show that any presumed counsel deficiency led to prejudice. *See Strickland*, 466 U.S. at 687.

## CONCLUSION

The Director asks this Court to deny Cantu's motion to stay and abate these proceedings and to deny relief on his habeas corpus petition.

    Respectfully submitted,

    GREG ABBOTT
    Attorney General of Texas

    ANDREW WEBER
    First Assistant Attorney General

    ERIC J.R. NICHOLS
    Deputy Attorney General
     for Criminal Justice

    EDWARD L. MARSHALL
    Chief, Postconviction Litigation Division

<table>
<tr><td>*Attorney-In-Charge</td><td>/s/ Thomas M. Jones<br>THOMAS M. JONES*<br>Assistant Attorney General<br>Postconviction Litigation Division<br>State Bar No. 00784357<br><br>P. O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548<br>(512) 936-1400<br>Fax No. (512) 936-1280<br>E-mail: Thomas.Jones@oag.state.tx.us<br><br>ATTORNEYS FOR RESPONDENT</td></tr>
</table>

## CERTIFICATE OF SERVICE

I, Thomas M. Jones, Assistant Attorney General of Texas, certify that in accordance with Local Rule CV-5(a)(3)(C), on January 8, 2009, a true and correct copy of the preceding pleading was electronically served upon:

Counsel for Cantu

Gena Bunn
Holmes & Moore, P.L.L.C.
P.O. Box 3267
Longview TX 75606

/s/ Thomas M. Jones
THOMAS M. JONES
Assistant Attorney General