UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IVAN ABNER CANTU, | § | CIVIL ACTION |
| | § | |
| Petitioner, | § | No. 2:06CV166 |
| | § | |
| v. | § | |
| | § | |
| RICK THALER, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Institutional Division, | § | |
| | § | |
| Respondent. | § | |

## PETITIONER'S BRIEF ON REMAND IN LIGHT OF *MARTINEZ V. RYAN*

On March 26, 2012, the United States Supreme Court granted Ivan Cantu's petition for writ of certiorari, vacated the Fifth Circuit Court of Appeals' prior opinion denying habeas relief, and remanded the case for reconsideration in light of its opinion – issued less than a week earlier – in *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309 (2012). At issue, whether Cantu's assertion that state habeas counsel rendered ineffective assistance constitutes cause sufficient to excuse the procedural default of his underlying claim of ineffective assistance of trial counsel. While prior circuit precedent precluded such a claim, the Supreme Court's opinion in *Martinez* recognized for the first time that ineffective counsel at initial-review collateral proceedings may establish cause in such context. The Fifth Circuit has remanded to this Court for consideration of the impact of *Martinez* in the first instance – that is, whether, in light of *Martinez*, this Court must reach the merits of Cantu's ineffective-assistance-of-trial-counsel claims.

## I.    Procedural History

Cantu was convicted of capital murder and sentenced to death by a jury in Collin County, Texas. The Texas Court of Criminal Appeals (CCA) affirmed Cantu's conviction and sentence on direct appeal. *Cantu v. State*, No. 74,220, 2004 WL 3093156 (Tex. Crim. App. Jun. 30, 2004). Based on factual findings and legal conclusions from the convicting court, the CCA also denied Cantu's postconviction application for writ of habeas corpus. *Ex parte Cantu*, No. WR-63624-01, 2006 WL 120829 (Tex. Crim. App. Jan. 18, 2006).

Cantu then filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Texas pursuant to 28 U.S.C. § 2254. In that proceeding, Cantu raised, for the first time, a claim that trial counsel rendered ineffective assistance at the guilt-innocence phase of trial. The federal district court denied Cantu's request to abate the proceedings to allow him to raise the unexhausted ineffective-assistance claim in state court, opting instead to dismiss the claim as procedurally barred based on its conclusion that the state courts would now find the claim barred based on Texas' statutory prohibition on successive habeas corpus applications. Docket # 29, ROA[1] 234; Docket # 30, ROA 250-252.

---

[1]    "ROA" refers to the federal Record on Appeal, followed by citation to page numbers.
"CR" refers to the Clerk's Record of papers filed with the clerk's office during Cantu's state court trial, preceded by volume number and followed by page numbers.
"RR" refers to the Reporter's Record of transcribed trial proceedings of Cantu's state court trial, preceded by volume number and followed by page numbers.
"SHCR" refers to the Clerk's Record of papers filed with the clerk's office during Cantu's state habeas corpus proceeding, preceded by volume number and followed by page numbers.
"SX" refers to the numbered exhibits offered by the State and admitted into evidence at Cantu's state court trial; "DX" refers to the numbered exhibits offered by the defense and admitted into evidence at Cantu's state court trial.

The court also rejected Cantu's contention that the ineffective assistance of state habeas counsel constituted cause sufficient to overcome the procedural bar, relying upon circuit precedent holding that there is no constitutional right to effective assistance of counsel on state collateral review. Docket # 30, ROA 252. The district court did, however, grant a certificate of appealability on this issue as well as Cantu's claim that he is actually innocent. Docket # 37, ROA 268-269.

On January 26, 2011, the Court of Appeals issued its opinion affirming the judgment of the district court. *Cantu v. Thaler*, 632 F.3d 157 (5th Cir. 2011). The Fifth Circuit affirmed the district court's holding that Cantu's guilt-innocence phase ineffective-assistance claim was procedurally barred, again relying upon prior circuit precedent for the proposition that a criminal defendant has no right to the effective assistance of counsel on state habeas corpus review. 632 F.3d at 166.

Cantu then filed a petition for writ of certiorari in the United States Supreme Court on June 9, 2011. Significantly, however, Cantu's petition was held over for several months, presumably while the Court considered *Martinez v. Ryan,* an Arizona case in which it had granted certiorari review on June 6, 2011.[2] *See Martinez v. Ryan*, 131 S. Ct. 2960 (2011) (Mem.). The Court heard arguments in *Martinez* on October 4, 2011. Then on March 20, 2012, the Court issued its opinion in *Martinez*, holding that inadequate assistance of counsel

---

[2]      *See Cantu v. Thaler*, No. 10-11031 (U.S. 2012) (available at http://www.supremecourt.gov/Search.aspx?FileName=/docketfiles/10-11031.htm) (the Court considered Cantu's petition at its September 26, 2011, conference but took no action until after *Martinez*).

at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial. *Martinez v. Ryan*, 132 S. Ct. 1309, 1318 (2012). Less than a week later, on March 26, 2012, the Supreme Court granted Cantu's petition for writ of certiorari, vacated the Fifth Circuit's prior opinion denying habeas relief, and remanded for reconsideration in light of *Martinez*. *Cantu v. Thaler*, 132 S. Ct. 1791 (2012) (Mem.).[3] Thereafter, the Fifth Circuit remanded to this Court "to decide in the first instance the impact of *Martinez v. Ryan* on Cantu's contention that he had cause for his procedural default." *Cantu v. Thaler*, 682 F.3d 1053 (5th Cir. 2012).

---

[3] The Supreme Court considered Cantu's petition in its March 23, 2012, conference, three days after it issued *Martinez*. *Cantu v. Thaler*, No. 10-11031 (U.S. 2012) (available at http://www.supremecourt.gov/Search.aspx?FileName=/docketfiles/10-11031.htm).

**II. Cantu satisfies the *Martinez* test for establishing cause sufficient to excuse the procedural default of his ineffective-assistance-of-trial-counsel claim, thus his claim must be reviewed on the merits.**

The Supreme Court explained in *Martinez* that, when "the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial" is a collateral attack on the judgment, it takes on special significance. 132 S.Ct. at 1315. Such "initial-review collateral proceedings," are "in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." *Id.* at 1315, 1317. And, because ineffective assistance of direct appeal counsel may excuse procedural default, the Court reasoned that there is a similar risk state prisoners will forfeit claims of ineffective trial counsel unless effectively represented in initial-review collateral proceedings. *Id.* at 1317. *Martinez* resolved this problem by holding that "[i]nadequate counsel in initial review proceedings may establish cause for a prisoner's procedural default[.]" *Id.* as 1315. Such cause exists if the collateral proceeding was actually the petitioner's first opportunity for state court review of his ineffective-counsel claim.

The *Martinez* Court held that a petitioner demonstrates cause to excuse the procedural default of an ineffective-assistance-of-trial-counsel claim by showing:

> (1)     that "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 [] (1984)"; and,

> (2)     that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that . . . [it] has some merit."

*Martinez*, 132 S. Ct. at 1318-19 (citing *Miller-el v. Cockrell*, 537 U.S. 322 (2003) (describing

standard for certificate of appealability).  Where, as here, the allegedly defaulted claim –
ineffective assistance of trial counsel – could not have been raised until state habeas corpus
proceedings, *Martinez* demands that counsel at that stage perform effectively.  Therefore,
counsel's failure to raise the claim gives rise to cause sufficient to excuse the resulting
procedural default.

Cantu satisfies each prong of the *Martinez* test; therefore, his claim of ineffective
assistance of trial counsel must be reviewed on the merits in federal court.

**A.  Cantu's state habeas corpus proceeding was the "initial-review collateral proceeding" within the meaning of *Martinez*.**

As to the first prong, state habeas corpus was Cantu's first opportunity to seek and obtain relief on his claim of ineffective assistance of trial counsel at the guilt-innocence phase.  Thus, the proceeding was the "initial-review collateral proceeding" within the meaning of *Martinez*.

**1.  *Martinez* applies to the first proceeding in which a prisoner can obtain relief for a violation of his Sixth Amendment right the effective assistance of counsel.**

Arizona, where *Martinez* arose, does not permit prisoners to raise ineffective assistance of counsel claims on direct appeal, requiring them instead to file such claims in state collateral proceedings.  Martinez sought federal habeas corpus relief claiming ineffective assistance of trial counsel.  The claim was procedurally defaulted because it had not been properly raised in state court.  Martinez argued that he was entitled to the effective assistance of counsel in that state collateral proceeding because it constituted his first opportunity to raise his claim of ineffective assistance of trial counsel.  Because he had been denied such assistance, Martinez contended, he had established "cause" for any default.  The district court found his claim of ineffective assistance of trial counsel procedurally defaulted, citing *Coleman v. Thompson*, 501 U.S. 722, 755 (1991) (holding that "post-conviction counsel's ignorance or inadvertence does not qualify as cause to excuse a procedural default."). The Ninth Circuit affirmed, and Martinez presented to the Supreme Court the question *Coleman* left open*:* "whether a prisoner has a [constitutional] right to effective

counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Martinez v. Ryan*, 131 S.Ct. 2960 (2011).

Although the Supreme Court granted *certiorari* to address Martinez's constitutional question, it deferred that issue and instead addressed "whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding." *Martinez*, 132 S.Ct. at 1315. The Court concluded that "a narrow exception" to the unqualified holding in *Coleman* was necessary "[t]o protect prisoners with a potentially legitimate claim of ineffective-assistance of trial counsel." *Id*. at 1315. Thus, the Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.*

The Court explained that an exception to *Coleman* was appropriate because when "an initial review-collateral proceeding" provides the first opportunity for raising a claim of ineffective assistance of trial counsel, it is the equivalent of a prisoner's direct appeal, in that "the state habeas court looks to the merits of the claim of ineffective assistance, no other court has addressed the claim, and defendants pursuing first-tier review are generally ill equipped to represent themselves because they do not have a brief from counsel or an opinion of the court addressing their claim of error." *Id.* at 1317 (citations and internal quotation marks omitted). *Martinez* pointed out that if direct appeal counsel is ineffective, "the prisoner has been denied fair process and the opportunity to comply with the State's

procedures and obtain adjudication on the merits of his [other] claims." *Id.* Without the effective assistance of counsel in initial-review collateral proceedings, there is a similar risk that prisoners will forfeit claims of ineffective assistance of trial counsel. *Id.* Such claims often cannot be presented adequately without factual investigation and an "understanding of trial strategy." *Id.* When a claim of ineffective assistance of trial counsel cannot be raised on direct appeal, a prisoner in initial-review collateral proceedings

> cannot rely on a court opinion or the prior work of an attorney addressing that claim . . . . The prisoner, unlearned in the law, may not comply with the State's procedural rules or may misapprehend the substantive details of federal constitutional law. . . . [C]onfined to prison, *the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the trial record.*

*Id.* (citation omitted) (emphasis added).

The *Martinez* Court recognized that while there are sound practical reasons for adjudicating ineffective assistance of counsel claims in collateral proceedings, doing so deprives the prisoner of constitutionally-guaranteed counsel to help safeguard perhaps the most important trial right:

> Ineffective-assistance claims often depend on evidence outside the trial record. Direct appeals, without evidentiary hearings, may not be as effective as other proceedings for developing the factual basis for the claim. *Ibid.* Abbreviated deadlines to expand the record on direct appeal may not allow adequate time for an attorney to investigate the ineffective-assistance claim. *See* Primus, *Structural Reform in Criminal Defense*, 92 Cornell L.Rev. 679, 689, and n. 57 (2004) (most rules give between 5 and 30 days from the time of conviction to file a request to expand the record on appeal). Thus, there are sound reasons for deferring consideration of ineffective-assistance-of-trial-counsel claims until the collateral-review stage, but this decision is not without consequences for the State's ability to assert a procedural default in later proceedings. By

> deliberately choosing to move trial-ineffectiveness claims outside of the direct-appeal process, where counsel is constitutionally guaranteed, the State significantly diminishes prisoners' ability to file such claims. It is within the context of this state procedural framework that counsel's ineffectiveness in an initial-review collateral proceeding qualifies as cause for a procedural default.

*Id.* at 1318. The core concern of *Martinez* is that a prisoner receive an adequate opportunity to vindicate his Sixth Amendment right to the guiding hand of counsel: "A prisoner's inability to present a claim of trial error is of particular concern when the claim is one of ineffective assistance of counsel. The right to the effective assistance of counsel at trial is a bedrock principle in our justice system." *Id*. at 1317.

**2.    Texas precedent makes clear that habeas corpus proceedings are the appropriate vehicle for reviewing extra-record claims of ineffective assistance of counsel.**

Texas law envisions that the first challenge to trial counsel's effectiveness — where that challenge relies upon evidence outside the trial record — will take place in state postconviction habeas corpus proceedings:

> Experience has taught us that in most instances where the claim of ineffective assistance of counsel is raised, the record on direct appeal is simply not in a shape, perhaps because of the very alleged ineffectiveness below, that would adequately reflect the failings of trial counsel. Indeed, in a case such as this, where the alleged derelictions primarily are errors of omission de hors the record rather than commission revealed in the trial record, collateral attack may be just the vehicle by which a thorough and detailed examination of alleged ineffectiveness may be developed and spread upon a record.

*Ex parte Duffy*, 607 S.W.2d 507, 513 (Tex. Crim. App. 1980), *overruled on other grounds by Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim. App. 1999). In fact, as demonstrated below, state law *affirmatively precludes relief* on a claim of ineffective assistance of trial

counsel raised on direct appeal if all the facts necessary to adjudicate the claim are not contained within the four corners of the appellate record.

An allegation that trial counsel were ineffective is a quintessential example of an extra- record claim that must be pressed in habeas corpus proceedings. Under *Strickland v. Washington*, 466 U.S. 668 (1984), the prisoner first "must show that counsel's representation fell below an objective standard of reasonableness," which must be judged under "prevailing professional norms." Second, he must demonstrate prejudice by showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In almost all cases, satisfying either prong of the *Strickland* test requires the prisoner to submit evidence from outside the trial record. For example, trial counsel must "make reasonable investigations [or] make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. When assessing trial counsel's performance, courts look not only to the record of the trial but to trial counsel's reasons for their actions: "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* "Whether counsel's omission served a strategic purpose is a pivotal point in *Strickland* and its progeny. The crucial distinction between strategic judgment calls and plain omissions has echoed in the judgments of this court." *Loyd v. Whitley*, 977 F.2d 149, 158 (5th Cir. 1992) (footnote omitted). Resolving this question — is the challenged failure to investigate a

"strategic judgment call," or a "plain omission"? — requires counsel to explain the rationale for their actions or omissions, which in turn requires the submission of evidence from outside the trial record.

On direct review, Texas courts impose a mandatory presumption, drawn from *Strickland*, that trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Ex parte Varelas*, 45 S.W.3d 637, 629 (Tex. Crim. App. 2001). Thus, except in the unusual situation where the trial record itself contains counsel's explanation for a challenged decision, a convicted defendant who challenges on direct review the effectiveness of his legal representation at trial cannot prevail under *Strickland*. The Court of Criminal Appeals consistently enforces this presumption; it recently reversed a lower court of appeals for failing to recognize that "direct review is usually an inadequate vehicle for raising such a claim":

> For a claim of ineffective assistance of counsel to succeed, the record must demonstrate both deficient performance by counsel and prejudice suffered by the defendant. An ineffective-assistance claim must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. "Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped." This statement is true with regard to the "deficient performance" prong of the inquiry, when counsel's reasons for failing to do something do not appear in the record. Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it."

*Menefield v. State*, 363 F.3d 591, 592–93 (Tex. Crim. App. 2012) (footnotes omitted). *See*

*also Rylander v. State*, 101 S.W.3d 107, 111 n.1 (Tex. Crim. App. 2003) (reversing lower court's decision on ineffective assistance claim, but emphasizing that the court was not "deciding on this direct appeal whether appellant did or did not receive effective assistance of counsel," and that he was free to submit his ineffective assistance claim "for review on the merits" in a habeas corpus application); *Freeman v. State*, 125 S.W.3d 505, 506–07 (Tex. Crim. App. 2003) (reversing lower court's grant of relief on direct review and noting "[we] have held several times that in cases like this the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel") (citations omitted); *Thompson v. State*, 9 S.W.3d 808, 814–15 (Tex. Crim. App. 1999) (same); *Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex. Crim. App. 1994) (same).

Ineffectiveness claims based on trial counsel's alleged failure to investigate and present evidence require a reviewing court both to assess counsel's pretrial preparation and consider any assertions of strategy by trial counsel. *See Strickland*, 466 U.S. at 691. In Texas, this evidence will not be in the direct appeal record because of a variety of circumstances identified by the Texas courts, any one of which would render the record inadequate to evaluate trial counsel's performance:

> [T]he trial record ordinarily does not reflect counsel's reasons for doing or failing to do actions of which the defendant complains. *While expansion of the record may be accomplished in a motion for new trial, that vehicle is often inadequate because of time constraints and because the trial record has generally not been transcribed at this point* . . . . Further, *mounting an ineffective assistance attack in a motion for new trial is inherently unlikely if trial counsel remains counsel during the time required to file such a motion*. Hence, in most ineffective assistance claims, a writ of habeas corpus is

essential to gathering the facts necessary to adequately evaluate such claims.

*Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997) (emphasis added); *see also Thompson v. State*, 9 S.W.3d 813–14 ("[i]n the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel"); *Ex parte Varelas*, 45 S.W.3d at 629 ("[i]n most cases, the record on direct appeal is 'inadequate to develop an ineffective assistance claim' because 'the very ineffectiveness claimed may prevent the record from containing the information necessary to substantiate such a claim'") (quoting *Torres*, 943 S.W.2d at 475); *Ex parte White*, 160 S.W.3d 46, 49 (Tex. Crim. App. 2004) (same).[4]

Likewise, it is rarely possible for a prisoner to show that he was "prejudiced" by any error of omission by trial counsel, as required by *Strickland*'s second prong, without presenting evidence from outside the trial record. The claim at issue in this case and in *Martinez* — a claim that trial counsel failed to investigate and present certain evidence — requires the investigation, presentation and consideration of substantial evidence from outside the trial record. In order to show that a different outcome was reasonably probable if trial counsel had performed properly, the prisoner or his postconviction counsel must submit the evidence that trial counsel should have discovered. "Claims of ineffective

---

[4] In Texas, it is only in habeas corpus proceedings that counsel are provided funding for investigators and experts — funding that is critical to the investigation and presentation of claims of ineffective assistance of counsel. *See* TEX. CODE CRIM. PROC. Art. 11.071, § 3. No comparable funding is provided for counsel on direct appeal. The statutory scheme thus recognizes the essential extra record nature of habeas corpus proceedings.

assistance at trial often require investigative work and an understanding of trial strategy."

*Martinez*, 132 S.Ct. at 1317.

Accordingly, as in *Martinez*, the first and only opportunity for a prisoner to secure relief on the vast majority of ineffective assistance of trial counsel claims in Texas is in state habeas corpus proceedings:

> While defendants in criminal cases in Texas are not legally prohibited from challenging the effectiveness of their trial counsel on direct appeal, such claims typically call for extensive factual development beyond what is disclosed in the appellate record, and thus, *as a practical matter, post-conviction habeas corpus is the first opportunity to raise them. Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999).

*Ex parte Hernandez*, 2012 WL 1060079, at *1, n.2 (Tex. Crim. App. Mar. 26, 2012) (Price, J., concurring). This fact — that relief is unavailable on direct review if the claim requires consideration of evidence from outside the record — has been repeatedly and consistently reiterated by the Texas Court of Criminal Appeals.

In *Thompson v. State*, the defendant challenged on direct appeal his trial counsel's failure to object to the State's manifest and persistent attempts to elicit inadmissible hearsay. After discussing *Strickland* and the prisoner's heavy burden of overcoming the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance," the Texas Court of Criminal Appeals held that the record was inadequate to resolve the claim because it was "silent as to *why* . . . trial counsel failed to object." *Thompson*, 9 S.W.3d at 814 (emphasis added). The opinion contains a strong warning to courts of appeals and litigants regarding the difficulties inherent in adjudicating ineffective

assistance claims on direct appeal:

> A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal. Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving such a serious allegation. *In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel. Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) . . . . "Indeed in a case such as this, where the alleged derelictions primarily are errors of omission de hors the record rather than commission revealed in the trial record, collateral attack may be *the* vehicle by which a thorough and detailed examination of alleged ineffectiveness may be developed and spread upon a record." *Jackson v. State*, 973 S.W.2d at 957. [Footnotes omitted].

*Id.* at 814–815 (emphasis added). *See also Bone v. State*, 77 S.W. 3d 828, 835 (Tex. Crim. App 2002) (citing *Jackson* language); *Ex parte Varelas*, 45 S.W.3d at 629–30 ("[i]n most cases, the record on direct appeal is 'inadequate to develop an ineffective assistance claim' because 'the very ineffectiveness claimed may prevent the record from containing the information necessary to substantiate such a claim'") (citations omitted); *Rylander v. State,* 101 S.W.3d 107 (Tex. Crim. App. 2003) (rejecting claim of ineffective assistance of trial counsel requiring non-record evidence; appellant encouraged to raise the claim in habeas corpus); *Mitchell v. State,* 68 S.W.3d 640, 643 (Tex. Crim. App. 2002) ("[g]enerally the record on direct appeal will not be sufficient to show the counsel's representation was so deficient as to meet the first part of the *Strickland* standard" . . . [habeas corpus] "usually is the appropriate vehicle to investigate ineffective-assistance claims) (citations omitted); *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App 2011) ("ineffective assistance claims are

generally not successful on direct appeal" because the record "is usually inadequately developed and 'cannot adequately reflect the failings of trial counsel," such claims "are more appropriately urged in a hearing on an application for writ of habeas corpus.").

Since *Martinez*, the Texas courts have continued to preclude relief on direct review of claims of ineffective assistance of trial counsel that rest on evidence outside the record. *See e.g. Velez v. State*, ___ S.W.3d ___, 2012 WL 2130890, at *35 (Tex. Crim. App. June 13, 2012) (denying relief on direct appeal because the record is insufficient to show "that counsel's representation was lacking in tactical and strategic decision making.").

The fact that postconviction review is the exclusive avenue to obtain relief on many ineffective-assistance claims was one of the considerations that drove some members of the Texas court to dissent from a holding that Texas law does not require court-appointed capital habeas corpus counsel to perform competently:

> If the defendant's habeas counsel performs deficiently, a meritorious claim [of ineffective assistance of trial counsel] may not be adequately raised or investigated. Applicants only get one shot at habeas corpus relief. If the attorney appointed on his first writ is incompetent, then a defendant, who was deprived of effective assistance of counsel at trial, has *no means* to enforce his constitutional right to affective assistance of counsel at trial.

*Ex parte Graves*, 70 S.W.3d 103, 124–25 (Tex. Crim. App. 2002) (Price, J., dissenting) (emphasis added). *See also Ex parte Rojas*, 2003 WL 1825617, at *1 (Tex. Crim. App. Feb. 12, 2003) (unpublished) (Price, J., dissenting) (Article 11.071 habeas corpus proceeding is the "one opportunity to raise claims not based solely on the record").

The absence of the availability of relief has prompted the Texas court to admonish

direct appeal counsel to refrain from raising ineffective assistance of counsel claims on direct review:

> This case stands for a very simple proposition: As a general rule, one should *not* raise an issue of ineffective assistance of counsel on direct appeal. This is so because a trial record is generally insufficient to address claims of ineffective assistance of counsel in light of the "strong presumption that [trial] counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). [Footnote omitted].
>
> * * * *
>
> A trial record is directed to the issues of guilt/innocence and punishment. And we review that record with an eye toward the errors allegedly committed in relation to those issues. However, in order to effectively argue an issue of ineffective assistance of counsel, a record focused on the conduct of trial or appellate counsel should be developed. Such a record is generally best developed in the context of a hearing held in relation to an application for writ of habeas corpus.

*Jackson v. State*, 877 S.W.2d 768, 772–773 (Tex. Crim. App. 1994) (Baird, J., concurring).

Finally, other Texas entities with expertise in the Texas post-conviction process have determined that post-conviction is the exclusive route for vindicating most claims of ineffective assistance of trial counsel. The State Bar of Texas Task Force on Habeas Counsel Training and Qualification — comprised of criminal appeals judges, trial judges, experienced defense counsel, and counsel from the Attorney General's office, all members of the bar with special expertise in this area —has recognized that state post-conviction is the lone avenue for securing relief on the type of claim at issue here:

> Habeas proceedings are the only opportunity available to those sentenced to death to raise post conviction claims of prosecutorial misconduct or ineffective

assistance of trial counsel and to present evidence not developed or discovered during trial—including evidence as to the actual innocence of the applicant.

STATE BAR TASK FORCE REPORT, *Apr. 27, 2007* (available at: http://www.aclutx.org/files/SBOT%20Task%20Force%20Final%20Report%20Signed.pdf).

This is not to say — nor does *Martinez* require — that Texas law *mandates* that ineffectiveness claims be raised in state habeas proceedings. In Texas, a claim that trial counsel was ineffective can be *raised* on direct appeal. But there is no *remedy* on direct review unless the claim is rests solely upon the paper record—or all necessary evidence is submitted in a motion for new trial, which must be filed within 30 days of judgment,[5] and almost invariably by *trial counsel*. *Martinez* recognized the substantial inadequacies in this approach. *Id.* at 1318 ("Abbreviated deadlines to expand the record on direct appeal may not allow adequate time for an attorney to investigate the ineffective-assistance claim.").

The statutory limitations on motions for new trial in Texas criminal cases render litigating most ineffective-assistance-of-counsel claims inherently impossible. As noted, the defendant must sufficiently investigate every allegation he wishes to raise within thirty days

---

[5] *See* TEX. R. APP. PROC. 21.4 – Time to File and Amend Motion, recites:

(a)  *To File.* The defendant may file a motion for new trial before, but no later than 30 days after, the date when the trial court imposes or suspends sentence in open court.

(b)  *To Amend.* Within 30 days after the date when the trial court imposes or suspends sentence in open court but before the court overrules any preceding motion for new trial, a defendant may, without leave of court, file one or more amended motions for new trial."

of judgment. TEX. R. APP. PROC. 21.4. Thereafter, he has just ten days in which to present any relevant evidence. TEX. R. APP. PROC. 21.6. While a trial court may extend the ten-day deadline somewhat, *id.*, it must reach a final decision on any issue raised by the defendant no later than 45 days after the motion is filed because Texas law mandates that trial courts rule on a motion for new trial within seventy-five days of the judgment. TEX. R. APP. PROC. 21.8(a) ("Time to Rule. The court *must* rule on a motion for new trial within 75 days after imposing or suspending sentence in open court.") (emphasis added).

Based on these limitations on motions for new trials in Texas, the Texas Court of Criminal Appeals itself recognizes the inadequacy of the motion for new trial as a vehicle for adjudicating ineffective assistance of counsel claims. *Ex parte Torres*, 943 S.W.2d 4 at 475 ("While expansion of the record may be accomplished in a motion for new trial, that vehicle is often inadequate because of time constraints and because the trial record has generally not been transcribed at this point."); *Jackson v. State*, 877 S.W.2d at 773, fn. 3 (addressing difficulties of developing a sufficient record on a motion for new trial).

Thus, in *Robinson v. State*, the CCA expressly found that new-trial proceedings were not effectively available to the appellant as a means of presenting his ineffective-assistance claim because "[t]he time requirements for filing and presenting a motion for new trial would have made it virtually impossible for appellate counsel . . . [and because] it would be absurd to require trial counsel to litigate his own ineffectiveness in a motion for new trial in order to preserve the claim for appeal." 16 S.W.3d 808, 811 (Tex. Crim. App. 2000).

In this case, as in the great majority of capital cases, the trial transcript was so voluminous that its preparation was not complete until well after the thirty-day deadline for filing a motion for new trial had passed.[6]

Moreover, the motion for new trial, as is almost universally the case, was filed by trial counsel.[7] Trial counsel can hardly be charged with assessing his own effectiveness. *See e.g. Kimmelman v. Morrison*, 477 U.S. 365, 378 (1986) ("Indeed, an accused will often not realize that he has a meritorious ineffectiveness claim until he begins collateral review proceedings, particularly if he retained trial counsel on direct appeal.").[8] The very short time

---

[6] *Compare* (Pursuant to TEX. R. APP. PROC. 21.4, the latest date by which the Motion for New Trial had to be filed, was on or before December 6, 2001. This is the 30th day from the date (November 6, 2001) that the trial judge sentenced Cantu to death in open court (CR 1456-1460)) *with* (Court Reporter filed the Reporter's Record on January 15, 2003 (*see* filed-stamped date on Reporter Record volumes)).

[7] On November 13, 2001, lead trial counsel, J. Matthew Goeller, filed the Motion for New Trial. CR 1476. The motion was overruled by operation of law.

[8] Federal courts have found cause for defaulted claims of ineffective assistance of counsel claims that could have been raised on direct review when trial counsel also served as appellate counsel or had control over the content of the appeal. *Riner v. Owens*, 764 F.2d 1253, 1257 (7th Cir. 1985) ("Since it would be most difficult if not professionally awkward to require a lawyer to argue on appeal his own ineffectiveness . . . we conclude that identity of trial and appellate counsel can constitute sufficient cause to meet the first element of the cause and prejudice standard."); *Alston v. Garrison*, 720 F.2d 812, 816 (4th Cir. 1983) ("We are satisfied with Alston's excuse for failing to raise his ineffectiveness claim at trial and on state appeal. The content of an appeal is heavily controlled by counsel, and where, as here, the defendant's trial lawyer also prosecuted the appeal, it is obvious that ineffective assistance of counsel is not likely to be raised at trial or to appear among the assignments of constitutional error.").

Similarly, federal courts have found cause for defaulted ineffective assistance of counsel claims when trial counsel represented the defendant in his first collateral proceeding. *Stephens v. Kemp*, 846 F.2d 642, 651 (11th Cir. 1988) ("We find 'cause' for petitioner's failure to raise the ineffective assistance issue in his first state habeas petition in the fact that petitioner's trial counsel, whose effectiveness is here challenged, also represented him in the first state habeas proceeding.");

frame for preparing a motion for new trial renders it practically impossible, assuming representation by conflict-free counsel, to read the record (if available) and conduct the sort of investigation necessary to reveal the inadequacies at issue in claims such as those presented here. In addition, the absence of a trial transcript forecloses even identifying those omissions of counsel discernible *from the trial record* that might support an ineffective assistance claim.[9]

The ineffectiveness claim at issue in *Martinez*, and the ones at issue herein, rest on evidence outside the trial record, though having the trial record is a prerequisite to adequately pleading the claim. Thus, for *Martinez* purposes, postconviction review was the "initial review proceeding" in which those claims could meaningfully be asserted. Any gloss that disregards this reality repudiates the text, spirit, and intent of *Martinez*.

---

*see also Bloomer v. United States*, 162 F.3d 187, 192 (2nd Cir. 1998) ("we need not find that appellate (or, by analogy, habeas) counsel was ineffective in failing to challenge the quality of the representation that he had rendered at trial. Rather, we effectively excuse the failure to raise that argument on appeal (or here on an initial § 2255 petition) due simply to counsel's inherent conflict of interest.").

[9] To be entitled to a hearing on a motion for new trial alleging ineffective assistance of counsel, a movant must "allege sufficient facts from which a trial court could reasonably conclude *both* that counsel failed to act as a reasonably competent attorney *and* that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different." *Smith v. State*, 286 S.W.3d 333, 340–41 (Tex. Crim. App. 2009) (emphasis in original). Accordingly, those facts must be developed prior to the 30-day deadline for filing. When direct appeal counsel is appointed who did not participate in the trial proceedings, and no transcript is available for review within the thirty-day deadline for filing a motion for new trial, presenting and adjudicating such claims in a motion for new trial is a practical impossibility.

**3.      Panels of the Fifth Circuit have adopted divergent approaches to *Martinez*.**

Cantu anticipates that the Respondent will assert, based on conflicted and incomplete Fifth Circuit precedent, that *Martinez* is inapplicable to this case.  In fact, the published orders of Fifth Circuit panels have taken two divergent approaches to *Martinez*.  The first looks at how the state in question routes litigation of ineffective assistance of trial counsel claims and whether postconviction proceedings will be the first *practical* occasion to raise such challenges.  The second asks whether it is technically possible to raise some claims of ineffective assistance on direct review.  If the answer to that question is "yes," the analysis ends without considering whether state post-conviction proceedings are nonetheless the first and only available proceeding in which the vast majority of such claimants may obtain relief, or even whether it was possible to raise on direct appeal the specific ineffectiveness claim at issue.

Adopting the second, hyper-technical approach would mean that many Texas litigants — for whom it is impossible to raise an extra-record ineffective assistance of counsel claim on direct review — will be unfairly denied the equitable safety valve established in *Martinez*. Only the former approach is faithful to *Martinez*, and this Court should embrace it.  The second approach is a plausible reading of *Martinez* only if the courts allow individual litigants, for whom it actually was impossible to raise an ineffective assistance of counsel claim on direct appeal, to show cause for a default under *Martinez*.

In *Lindsey v. Cain*, 2012 WL 1366040, at *1 (5th Cir. Apr. 19, 2012) (unpublished),

the first Fifth Circuit decision to address *Martinez*, the panel concluded that "[w]hen a state, like Louisiana, requires that a petitioner raise an ineffective assistance of counsel claim on collateral review," he may invoke *Martinez* to establish cause for a procedural default. *Id.* As another member of the court subsequently noted, Louisiana's handling of ineffective assistance of counsel claims is materially indistinguishable from Texas':

> Louisiana, like Texas, allows a prisoner to raise ineffective assistance of counsel on direct appeal "when the record contains sufficient evidence to decide the issue and the issue is properly raised by assignment of error on appeal." *State v. Brashears*, 811 So.2d 985 (La. App. 5 Cir. 2002). *See also State v. Williams*, 738 So.2d 640,651-652 (La. App. 5 Cir. 1999) ("Ineffective assistance of counsel claims are most appropriately addressed on application for post conviction relief, rather than on direct appeal, so as to afford the parties adequate opportunity to make a record for review. However, when an ineffective assistance claim is properly raised by assignment of error on direct appeal and the appellate record contains sufficient evidence to evaluate the claim, the reviewing court may address the ineffective assistance claim in the interest of judicial economy.").

Order, *Ibarra v. Thaler*, 687 F.3d 222, 230 (5th Cir. 2012) (Graves, J., dissenting) (order denying Ibarra's motion for a remand to the district court). The fact that Louisiana courts may sometimes hear claims of ineffective assistance of trial counsel on direct appeal — when deciding such claims does not require resort to evidence outside the appellate record — was not enough to deny the benefit of *Martinez* to Louisiana prisoners.[10]

The first published post-*Martinez* opinion by the Fifth Circuit was in *this* case, *Cantu*

---

[10]    A federal district court has also applied *Martinez* to Louisiana, noting Louisiana's "jurisprudential rule . . . that ineffective assistance claims are generally best suited for post-conviction proceedings," and observing that the state court had applied that rule in the petitioner's own case. *Wessinger v. Cain*, 2012 WL 1752683, at *2 (M.D. La. May 16, 2012) (*citing State v. Hamilton*, 699 So.2d 29, 31 (La. 1997), and *State v. Wessinger*, 736 So.2d 162, 195 (La. 1999)).

*v. Thaler*, 682 F.3d 1053 (5th Cir. 2012).   The Supreme Court first considered Cantu's petition — and the Respondent's Opposition — on September 26, 2011, and decided to hold the case for *Martinez*.   The Court revisited Cantu's petition after *Martinez* and — after considering pleadings raising the issue of whether post-conviction proceedings were the first opportunity for Texas litigants to obtain relief on an ineffective assistance of counsel claim — granted certiorari, vacated the Fifth Circuit's prior decision, and remanded the case for further consideration in light of *Martinez*.  *Cantu v. Thaler*, 132 S.Ct. 1791 (2012) (Mem.).

On June 1, 2012, the Fifth Circuit, in a published opinion, remanded to this Court for further consideration of Cantu's contention that his state habeas counsel was ineffective and thus he had cause for the default.  *Cantu v. Thaler*, 682 F.3d 1053 (5th Cir. 2012).  While the panel did not expressly hold that state postconviction was Cantu's first opportunity to raise his ineffective assistance of trial counsel claim, there would have been no reason to remand the case back to the district court for consideration of Cantu's argument for cause if *Martinez* had no application in Texas.  The panel held the case for over a month after the Supreme Court's decision was final, and then — like the *Lindsey* panel — remanded the case to the district court.   In the context of cases in which the arguments regarding the applicability had been fully briefed in — and implicitly rejected by — the Supreme Court, the most sensible reading of *Cantu* is that the panel deemed *Martinez* applicable and the remand was to consider whether Cantu's state habeas counsel was in fact ineffective.

Four weeks later, in response to another petitioner's request for a remand to the

district court, a divided panel of the Fifth Circuit adopted the opposite position.  Relying on the fact that "Texas defendants may first raise ineffectiveness claims before the trial court following conviction via a motion for new trial, *when practicable*," the panel stated that *Martinez* did not apply to Texas.  *Ibarra*, 687 F.3d at 227 (emphasis added).  Of course, the operative language here is "when practicable."  As described, *supra*, the Texas Court of Criminal Appeals has stated that it most often will not be "practicable" for a convicted defendant to raise on direct appeal a claim of ineffective assistance of trial counsel:  "While expansion of the record may be accomplished in a motion for new trial, *that vehicle is often inadequate* because of time constraints and because the trial record has generally not been transcribed."  *Ex parte Torres*, 943 S.W.2d at 475 (emphasis added); *see also id*. ("mounting an ineffective assistance attack in a motion for new trial is inherently unlikely if trial counsel remains counsel during the time required to file such a motion.").  Carried to the extreme, the rationale endorsed by the *Ibarra* majority would deny the benefit of *Martinez* to *all* Texas prisoners simply because *some* litigants *might* be able to raise their ineffective assistance of counsel claims on direct appeal.  *Ibarra*, however, did not reach the question of whether *Martinez* applies to those Texas prisoners who — because of the circumstances of their case — cannot raise an ineffective assistance of trial counsel claim on direct appeal.  Thus, it does not control the outcome of this case.[11]

---

[11]  Additionally, *Ibarra* was not a dispositive opinion but a non-dispositive order denying a remand to the district court.  The case is still pending before the court of appeals on Ibarra's request for a certificate of appealability (COA).  The panel has yet to decide whether to grant COA, whether Ibarra's claim is in fact procedurally defaulted and, if so, whether his other arguments for cause

Another Fifth Circuit panel, without the benefit of any post-*Martinez* briefing from the parties, concluded in an unpublished opinion that *Martinez* has no application to Texas. In *Gates v. Thaler*, 2012 WL 2305855 (5th Cir. June 19, 2012) (unpublished), the briefing was complete long before *Martinez* was decided. *See Gates v. Thaler*, No. 11-70023 (June 19, 2012) (the last filing prior to the opinion was dated October 26, 2011, five months before the *Martinez* decision). Thus, neither party had briefed *Martinez* or how it might apply in Texas. Nonetheless, the panel anticipated that Gates "m[ight] contend" that *Martinez* applied to his case, and then proceeded to reject the argument that Gates might have raised. *Id*. at *6. The panel noted that a capital defendant can raise, and the Court of Criminal Appeals will consider, a claim of ineffective assistance of counsel on direct review, citing *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992).

The *Gates* panel was correct, insofar as its analysis went, but that analysis was fundamentally incomplete. It is true that a capital defendant can raise on direct appeal a claim of ineffective assistance of trial counsel, and that the Court of Criminal Appeals may consider it. However, what the Court of Criminal Appeals will not do on direct appeal is *grant relief* on any ineffective assistance claim that rests on facts outside the appellate record.

---

excuse the default. If there is no default, or if the default is excused on a different basis, then the panel purported to settle a question of law "that cannot affect the rights of the litigants in the case before it." *C&H Nationwide, Inc. v. Northwest Bank Texas NA*, 208 F.3d 490, 493 (5th Cir. 2000) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). That Ibarra himself prematurely requested the remand is of no moment, the court of appeals was obligated to decline the invitation to issue an advisory opinion. *See e.g. In re Coho Resources, Inc.*, 345 F.3d 338, 345 (5th Cir. 2003) ("we decline [the litigant's] invitation to issue an advisory opinion on the question.").

This is true of even the most ostensibly record-bound claims, such as complaints about trial counsel's failure to lodge a meritorious objection. As described, *supra*, even these claims require factual development to establish whether counsel had any strategic reason for not objecting. Absent such factual development, on direct review the Court of Criminal Appeals will "presume [that trial counsel] . . . rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Varelas*, 45 S.W.3d at 629.

Thus, the observation that ineffective-assistance-of-counsel claims can be raised on direct appeal in Texas is true to the same extent that it is true that litigants may deliberately bypass state-court remedies and raise claims for relief for the first time in federal habeas corpus proceedings. Petitioners can indeed raise such claims, and federal courts can consider and deny such claims on the merits. 28 U.S.C. § 2254(b)(2). However, relief is not available to such litigants, and neither is it available to Texas defendants who seek to raise extra-record ineffective assistance of counsel claims on direct review. Like *Ibarra*, the *Gates* panel did not address whether *Martinez* applied to litigants who could not raise their claims on direct appeal.

Critically, on July 30, 2012, the Fifth Circuit issued a letter requesting a response from the Office of the Texas Attorney General to the petition for rehearing en banc filed by Gates, indicating that the appellate court may be poised to grant the petition and review the issue en banc.

Finally, it should be noted that another circuit has already construed *Martinez* to apply

to states like Texas. In Oregon, as in Texas, there is no absolute bar to raising ineffective assistance of counsel claims on direct appeal, but claims that rely on facts outside of the record cannot reasonably be asserted on direct appeal. *Compare State v. Robinson*, 550 P.2d 758 (Or.App.1976) ("Appellant contends on appeal that his trial counsel was incompetent. This issue, except in rare instances, is one which can be properly resolved only in a postconviction proceeding in which evidence can be taken. *See, Turner v. Cupp*, 1 Or.App. 596, 465 P.2d 249 (1970)."), *with Ex parte Torres*, 943 S.W.2d at 475 ("in most ineffective assistance claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately evaluate such claims").

Knowing that it was technically possible to raise at least some ineffective assistance of counsel claims on direct review in Oregon, the Ninth Circuit nonetheless held that *Martinez* applied to Oregon petitioners in § 2254 proceedings: "For the purposes of our review in this case, therefore, *Martinez* instructs that Sexton may establish cause for his procedural default of his new ineffective assistance of trial counsel claims, because the State of Oregon required Sexton to raise them in a collateral proceeding, *State v. Robinson*, 550 P.2d 758 (Or. App. 1976)." *Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012). The panel nonetheless denied Sexton's request for a remand to the district in light of *Martinez* based on its determination that trial counsel was not ineffective. *Id.*

**4. Regardless of whether *Martinez* applies to all Texas cases, it binds every federal court adjudicating a case in which postconviction was "the first occasion to raise a claim of ineffective assistance at trial." *Martinez* thus applies to Cantu because several circumstances precluded him from raising his claim on direct appeal.**

*Martinez*'s holding stems from the concern that prisoners have one opportunity to litigate an ineffective assistance of counsel claim. *Martinez* was thus focused on "initial-review collateral proceedings," which the Court defined as "the *first occasion* to raise a claim of ineffective assistance at trial." *Martinez*, 132 S.Ct. at 1315 (emphasis added). The court was concerned that,

> [w]hen an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim. This Court on direct review of the state proceeding could not consider or adjudicate the claim . . . . And if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims.

*Id*. at 1316. "Without the help of an adequate attorney, a prisoner will have . . . difficulties vindicating a substantial ineffective-assistance-of-trial-counsel claim." *Id*. at 1317. Thus the *Martinez* Court sought to ensure that litigants would not be barred from federal court if they had been denied access to adequate counsel for their first opportunity to raise an ineffective assistance of trial counsel claim in state court:

> Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim.

*Id*. at 1318.

The Court ultimately held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. The principle that animates *Martinez* is that petitioners should have adequate counsel for "the first occasion" to raise their ineffective assistance of counsel claims. *Martinez* must apply to all prisoners who, due to the circumstances of their individual case, cannot raise their ineffective assistance of counsel claim on direct review. Cantu is one of them.[12]

Cantu was sentenced to death on November 6, 2001, (CR 1456-1460); thus his motion for new trial was due on December 6, 2001, thirty days after he was sentenced. TEX. R. APP. PROC. 21.4. The trial court was required to finally dispose of the motion by January 21, 2002. TEX. R. APP. PROC. 21.8(a) ("The court must rule on a motion for new trial within 75 days after imposing or suspending sentence in open court;" because the 75th day was Sunday, January 20, the trial court had until Monday, January 21).

Cantu's lead trial counsel, J. Matthew Goeller, filed a two-page motion for new trial on November 13, 2001. CR 1476-1478. There is no indication in the record that either

---

[12] *Ibarra* does not control here because Ibarra argued only that, based on the Texas direct review and postconviction schemes, *Martinez* applied to *every* Texas prisoner. The Fifth Circuit rejected that argument: "Ibarra is not entitled to the benefit of *Martinez* for his ineffectiveness claims, as Texas procedures entitled him to review through counselled motions for new trial and direct appeal." *Ibarra*, 2012 WL 2620520, at *4. Ibarra did not argue, and the court did not address, whether the particular circumstances of an individual case would render postconviction the first occasion for raising an ineffective-assistance-of-counsel claim. Likewise, Ibarra did not assert that the trial lawyer's conflict of interest during the motion for new trial rendered him ineffective in those proceedings.

Goeller or co-counsel Don High ever filed formal motions to withdraw from the case. However, on November 7, 2001, a new lawyer, David Haynes, was appointed to represent Cantu on direct appeal; and another attorney, Jan Hemphill, was appointed to represent Cantu on habeas corpus. CR 1471, 1472. Under the Texas rules, Cantu had ten days from the date his motion was filed, until November 23, 2001, to present any relevant evidence in support of it. TEX. R. APP. PROC. 21.6. And the trial court had until January 21, 2002, to finally dispose of the motion. Meanwhile, on January 4 and 25, 2002, Cantu sent letters to the district clerk expressing confusion over who was representing him and making it clear that he had not had any contact with either direct-appeal counsel or habeas-corpus counsel and, in fact, had not even been advised of their identity. CR 1488-1491. On January 15, 2003, the reporter's record of Cantu's trial was filed with the district clerk and was made available to counsel of record. *See* file-stamped date on Reporter Records Volumes.

Thus, Cantu's motion for new trial was filed by trial counsel, who had a conflict of interest with respect to any ineffective-assistance-of-counsel claim. Moreover, Cantu remained represented by his trial counsel beyond the statutory deadline for submitting evidence in support of the motion. The mandatory statutory deadline for the trial court's final disposition of Cantu's motion for new trial was on January 21, 2002, but Cantu's trial counsel, who filed the motion for new trial, remained on Cantu's case. Additionally, the trial record was apparently not available to direct-appeal and habeas-corpus counsel until more than a year after their appointment.

Thus, the very first day that Cantu was represented by conflict-free counsel with access to the trial record was on January 15, 2003, almost a year after the mandatory deadline for concluding all proceedings related to a motion for new trial in Cantu's case. It is beyond the realm of possibility that either Mr. Haynes or Ms. Hemphill could have recognized at the outset of their appointments, without the trial record or conferring with Cantu, that trial counsel were deficient in their representation. But even if such a miraculous epiphany were possible on January 15, 2003, it would have been too late because Texas law provided no basis for introducing new evidence 360-plus days after the judgment—except in postconviction proceedings.

While a motion for new trial might present a theoretically possible avenue for raising some claim of ineffective assistance of trial counsel in some Texas cases, *see Ibarra*, 2012 WL 2620520, at *4, it was simply impossible to file the ineffective-assistance claim at issue here under the circumstances of Cantu's case. Cantu was represented by trial counsel during the motion for new trial proceedings, thus an actual conflict of interest precluded presentation of the claim. Alternatively, even if it can be said that Texas defendants have two bites at the apple because they can allegedly raise fact-intensive, extra-record ineffectiveness claims either on direct review through a motion for new trial or in postconviction proceedings, Cantu was saddled with ineffective counsel for *both* proceedings. An actual conflict of interest rendered trial counsel ineffective during the motion for new trial and, as demonstrated above, Cantu's state habeas counsel was also ineffective. Thus, regardless of

which proceeding the Fifth Circuit ultimately concludes is the "first occasion" for raising an ineffectiveness claim in Texas, Cantu can demonstrate cause.

In *Martinez*, the Arizona Supreme Court's directive that prisoners not raise their Sixth Amendment claims on direct appeal meant that postconviction proceedings were "the first occasion to raise a claim of ineffective assistance at trial."  Here, the circumstances of the case also meant that postconviction proceedings were "the first occasion to raise a claim of ineffective assistance at trial."  The result is the same: *Martinez* applies to the case at bar. *See e.g. Arthur v. Thomas*, 2012 WL 2357919, slip. at *9 (N.D. Ala. June 20, 2012) (distinguishing, for *Martinez* purposes, between cases in which petitioners receive new counsel for direct appeal).

**B.** **Cantu's court-appointed state habeas counsel rendered ineffective assistance by failing to challenge trial counsel's performance at the guilt-innocence phase of Cantu's trial.**[13]

As to the second *Martinez* prong, Cantu's attorney on state habeas rendered ineffective assistance under the *Strickland* standard by failing to interview Cantu and conduct an independent investigation of the facts of the offense, and, in turn, by failing to argue that trial counsel were ineffective for conceding Cantu's guilt rather than argue his innocence.

**1.** **The statutory duty of Texas capital habeas corpus counsel is to conduct a thorough extra-record investigation and identify the factual bases for relief.**

Article 11.071 of the Texas Code of Criminal Procedure governs Texas capital habeas corpus proceedings. Tex. Code Crim. Proc. art. 11.071 § 1. The appointment of counsel is mandatory unless waived by the prisoner. *Id*. at § 2. The habeas statute *requires* that counsel conduct an extra-record investigation:

> Investigation of Grounds for Application
>
> Sec. 3. (a) On appointment, counsel *shall* investigate expeditiously, *before and after* the appellate record is filed in the court of criminal appeals, the factual and legal grounds for the filing of an application for a writ of habeas corpus.

*Id*. at § 3 (emphasis added). Counsel must be thorough and exercise reasonable diligence to uncover the factual basis for every available claim. *Id*. at § 5(e) (claims are not cognizable in subsequent habeas applications, and thus waived, unless "the factual basis was not

---

[13] It should be noted that, because pre-*Martinez* circuit precedent precluded any substantive review of either Cantu's underlying claim of trial-counsel ineffectiveness or his assertion of cause based on state-habeas-counsel ineffectiveness, Cantu has never had an opportunity to factually develop this claim. Cantu thus seeks an evidentiary hearing to present evidence proving his assertion that state habeas counsel rendered ineffective assistance.

ascertainable through the exercise of reasonable diligence" when the prior application was filed). Investigation is so fundamentally important that Texas courts are obligated to grant all reasonable investigative funding requests. *Id*. at § 3©; § 3(d).

2.    **The contemporaneous standard of care in Texas capital habeas corpus cases, as reflected in State Bar of Texas materials, prescribed a broad and thorough investigation.**

One year after the 1995 passage of article 11.071 overhauled capital habeas corpus proceedings and established a right to counsel, the State Bar of Texas published the third edition of the Texas Criminal Appellate Manual. *See* State Bar of Texas, Texas Criminal Appellate Manual (3rd ed. 1996) ("State Bar Manual"). One of the chapters in the State Bar Manual was a primer for defense counsel litigating capital habeas corpus cases. *Id*. The State Bar Manual confirms that, by 1996, the prevailing standard of care in capital habeas corpus representation compelled counsel to conduct extensive investigation.

The manual begins with "essential ideas to bear in mind" when considering the habeas corpus litigation, the first two of which stress the need to investigate the case:

> *1. State habeas litigation is not the same as a direct appeal. Habeas litigation concentrates on developing and presenting facts outside the appellate record* which, in conjunction with facts in the record, raise important constitutional claims. Habeas counsel must know the appellate record, but cannot be bound to it, or they will offer their clients nothing more than another attempt at a direct appeal.
>
> *2. Writ practice requires investigation.* You can't learn about, develop, and present facts outside the record if you don't investigate the case. *Investigation for a writ can be as intensive as investigation in preparation for trial. This must be so particularly where habeas counsel believes that trial counsel may have rendered ineffective assistance of counsel.* It is impossible to accurately

-36-

evaluate the effectiveness of counsel without knowing what the counsel in question knew or could have known.

State Bar Manual at 4 (emphasis added).

The State Bar Manual repeatedly emphasizes the paramount importance of extra-record fact development:

> Facts outside the record are critical to a successful writ application. Those facts must be sought out through investigation . . . . Because of the nature of habeas claims, habeas counsel must investigate not only the client's background and the facts that gave rise to the offense, but also the investigation by police and defense counsel and the actions of the jury. There is no quick and easy way to do this and counsel will almost certainly need the help of a trained investigator to do an efficient and complete job . . . .

State Bar Manual at 31.

Ten pages — almost 25 percent — of the State Bar Manual are dedicated to describing the scope and depth of the requisite investigation. State Bar Manual at 31–40. Of course, any investigation begins with the client, and the State Bar Manual describes the "[t]opics to cover" during client interviews:

> (1) *Your client[']s version of the facts of the offense;* (2) *his or her relationship with the trial and direct appeal lawyers;* (3) *anything the client found strange, unusual or objectionable about the trial or direct appeal;* (4) your client's social history, including his or her background, education, family history, medical history, drug abuse history, etc. You should strive to know more about your client and his or her history than any other lawyer has known, and perhaps more than his own family has known, to ensure that you are aware of and can use all beneficial information that might come from that knowledge.

State Bar Manual at 32–33 (emphasis added).[14]  Given this broad range of topics, the State Bar Manual advises habeas counsel that "the information you need from your client cannot be obtained in just one interview," thus "the more conversations you have, the more likely it is that you will win the inmate's trust and uncover additional helpful and highly relevant information."  State Bar Manual at 33.

Client interviews, though critical, "must serve as the beginning, not the end, of [counsel's] investigation."  State Bar Manual at 33–34.  Habeas counsel must also meet with trial counsel or, at a minimum, obtain trial counsel's files:

> [Y]ou should always, at the first meeting with [trial counsel], request their files.  The files and all the notes in them belong to the client, not the lawyer, and you should insist on them being turned over to you . . . .  [H]aving access to the file is vital, for it will tell you a lot about what information the lawyers had and what they were doing before, during and after the trial.  Be sure that the file you receive includes all notes of the lawyers as well, for those notes are also the property of the client.

State Bar Manual at 34.

The above steps are merely preliminary measures: "Your record review, and interviews of your client, his or her family, and trial counsel will give you a pretty good idea of what some of the important issues may be in the case.  That will allow you to focus your energy on developing information relevant to those issues."  State Bar Manual at 34–35.  The State Bar Manual subsequently describes three basic methods for investigating the case.

---

[14] This standard essentially mirrors the Texas Court of Criminal Appeals' determination that, in a 1997 trial, capital defense counsel had a duty to interview the client about specific aspects of his social history.  *Ex parte Gonzales*, 204 S.W.3d 391, 400–01 (Tex. Crim. App. 2006) (Cochran, J., concurring).

First, habeas counsel must collect a wide variety of records, a lengthy process that begins early in the representation: "It is vital to start gathering records as early in your writ preparation process as possible. Records collection is time consuming and is sometimes contested by agencies who are the custodians of records. It is preferable to deal with these disputes early in the investigation rather than in the last weeks or days before the writ application is due." State Bar Manual at 35. The State Bar Manual also includes a five-page "Investigative Source List," State Bar Manual at Appendix I, which itemizes numerous other sources of relevant documents.

Second, habeas counsel must collect information from all relevant law enforcement agencies:

> Always seek access to the district attorney's files and law enforcement agency files regarding the capital offense and any other offenses that you believe will be relevant to any of your claims, including offenses committed by key state's witnesses, such as jailhouse informants . . . . [I]t [is] important to energetically seek access to the files of every law enforcement agency that may have generated information regarding your client.

State Bar Manual at 36.

Third, habeas counsel must obviously interview witnesses and, when possible do so in person: "As you begin to focus on the claims you want to pursue, you will identify people who have important information about those claims. Some may have testified at trial. Others may never have been called or perhaps were even unknown at the time of trial. You or your investigator need to interview these people in person, if at all possible." State Bar Manual at 37.

The State Bar Manual observed that "it should be clear that the services of an experienced criminal or habeas investigator are invaluable in efficiently and comprehensively gathering the information necessary for a writ application." State Bar Manual at 38.

3. **Cantu's state habeas counsel failed to either interview Cantu or conduct an independent investigation of the facts of the offense; she, thus, failed to argue that trial counsel were ineffective for conceding Cantu's guilt rather than argue his innocence.**

. Shortly after Cantu was sentenced to death, while his case was pending on direct review, attorney Jan Hemphill was appointed to represent Cantu on state habeas corpus review. Ms. Hemphill never met with Cantu to consult with him regarding what claims may have been available to raise in state collateral review. She failed to respond to Cantu's repeated requests to communicate with her before the state habeas application was filed. In fact, Ms. Hemphill met with Cantu only once during state habeas corpus proceedings, and that was to discuss having her removed as counsel (which did not happen).

Ultimately, Ms. Hemphill filed a state habeas application without ever having discussed it with Cantu – and the application only challenged the death sentence, not the conviction itself. The application omitted several potentially meritorious claims, including the claim that trial counsel rendered ineffective assistance by failing to investigate and present evidence of Cantu's actual innocence of the crime. This omission amounted to deficient performance; and absent such omission, there is a reasonable likelihood Cantu would have been granted relief. Court-appointed state habeas counsel Jan Hemphill utterly failed to provide reasonably adequate assistance of counsel during state habeas corpus

proceedings.

Additionally, Cantu contacted both the State Bar of Texas and the convicting court in an attempt to call attention to state habeas counsel's failings and express his dissatisfaction with her handling of his case, but to no avail. He was, in essence, forced to acquiesce to the conduct of an attorney who refused to hear him out. Precedent teaches that, on state habeas corpus review, "[a]ttorney ignorance or inadvertence is not 'cause' [sufficient to overcome procedural default] because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Coleman v. Thompson*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). But under the circumstances presented in this case, state habeas counsel cannot truly be said to have acted as Cantu's agent.

Cantu was, in fact, deprived of the effective assistance of counsel in his "one and only appeal" available to challenge trial counsel's performance. Such ineffective assistance constitutes cause sufficient to excuse the procedural default of the underlying claim.

**C.  Cantu's underlying claim of ineffective assistance of trial counsel is substantial and has sufficient merit to satisfy the threshold showing of *Miller-el v. Cockrell*.**

Finally, as to the third *Martinez* prong, Cantu's claim of trial-counsel ineffectiveness satisfies *Martinez*'s threshold showing of substantial merit.  Cantu's trial attorneys – Matt Goeller and Don High – rendered constitutionally ineffective assistance by failing to conduct any significant investigation into the facts of the crime for which their client was accused. They failed to discover and/or effectively utilize several critical pieces of evidence that supported Cantu's unwavering insistence that he had no involvement in the murders of his cousin and his cousin's fiancee.  In fact, during closing argument at the guilt-innocence phase of trial, counsel repeatedly conceded Cantu's culpability for the murders.  But no court has ever scrutinized the performance of Cantu's attorneys at the guilt-innocence phase of his trial.

**1.  Trial counsel had a duty to independently investigate the State's case for guilt.**

In reviewing claims of ineffective assistance of counsel, courts employ the two-prong inquiry articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong, known as the deficient-performance prong,  requires the petitioner to demonstrate that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006); *Strickland*, 466 U.S. at 688.  In evaluating counsel's performance, the Supreme Court has long referred to the American Bar Association ("ABA") Standards for Criminal Justice as "guides to determining what is reasonable."  *Rompilla v. Beard*, 545 U.S. 374, 387

(2005); *Wiggins v. Smith*, 539 U.S. 510, 524 (2003); *Strickland*, 466 U.S. at 688. And courts must apply a "strong presumption that counsel performed adequately and exercised reasonable professional judgment." *Virgil*, 446 F.3d at 608 (quotation omitted). Furthermore, "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. So a "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Virgil*, 446 F.3d at 608 (quotations omitted). "At the same time, however, courts are 'not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all.'" *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) (quoting *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999)).

The second prong requires the defendant to demonstrate that he was prejudiced by the deficient performance of his attorney. To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

It is beyond cavil that trial counsel has a duty to conduct an independent investigation of the facts of the offense with which his client is charged.

> Counsel should conduct independent investigations relating to the guilt/innocence phase and to the penalty phase of a capital trial. Both

investigations should begin immediately upon counsel's entry into the case and should be pursued expeditiously. The investigation for preparation of the guilt/innocence phase of the trial should be conducted regardless of any admission or statement by the client concerning facts constituting guilt. The investigation for preparation of the sentencing phase should be conducted regardless of any initial assertion by the client that mitigation is not to be offered. This investigation should comprise efforts to discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.

ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (1989) (hereinafter, "ABA Guidelines"), 11.4.1(A-C) "Investigation." *See also* ABA Criminal Justice Standard 4-4.1(a). In furtherance of this duty to investigate, counsel are advised to utilize various sources including charging documents, the accused, potential witnesses, the police and prosecution, physical evidence, the scene, and expert assistance. ABA Guidelines 11.4.1 (D). The ABA Guidelines advise specifically that "counsel should demand on behalf of the client all necessary experts for preparation of both phases of trial." ABA Guidelines 11.4.1 (Comment).

2.     **Rather than investigate potential witnesses and evidence which would have supported Cantu's innocence or otherwise effectively challenge the State's case, trial counsel conceded Cantu's guilt before the jury, thereby rendering constitutionally ineffective assistance.**

In spite of these admonishments, Cantu's trial counsel failed to even request the appointment of a defense investigator. This failure certainly hampered their ability to explore the complex facts and extensive cast of characters surrounding the commission of this offense. And, no doubt, their lack of an investigator was the reason they were unable to interview potential witnesses and obtain evidence apart from that provided by the State in

discovery. Counsel also failed to seek the assistance of a DNA expert, a ballistics expert, a latent fingerprint examiner, a blood-spatter expert, or a medical examiner, all experts utilized by the State in the presentation of its case-in-chief. Counsel basically opted to take the State's case for guilt at face value to the detriment of their client. Thus, keys facts concerning the offense were never explored.

Cantu was accused of the murders of his cousin James Mosqueda – a local drug dealer who sold in large quantities – and Mosqueda's fiancé Amy Kitchen in their North Dallas home. The State's principal witness against Cantu was Amy Boettcher – Cantu's girlfriend at the time the crime was discovered – who even the prosecutor described as a "doper" and a "lawbreaker[]" for whom he had no respect.[15] 41 RR 55. Boettcher claimed that on November 3, 2000, the night before the bodies were discovered, Cantu spoke to Mosqueda over the phone and arranged to go to his house to talk to him. 35 RR 121. According to Boettcher, Cantu told her he was going to kill Mosqueda and Kitchen, but she did not believe him; he then left with a gun. *Id.* at 121, 124, 125. He came back to the apartment less than an hour later with his clothes bloody and his face swollen. 36 RR 57, 58. Cantu and

---

[15] Boettcher was never charged in connection with the murders, despite her claimed presence at the scene shortly after the crime. 36 RR 19-20, 31. She denied at trial that she had received any deal for her testimony; but after she testified at Cantu's trial, the State never sought revocation of her probation (though she was obviously in violation) and she was allowed to relocate to Arkansas without any further reporting requirements. 36 RR 19-20, 29-33, 44, 69-71, 94-95. Further, though the record reveals that the State initially planned to subject Boettcher to a polygraph examination and had made arrangements to do so, they ultimately declined to conduct the examination, giving as an excuse some vague assertion that her menstrual cycle could possibly affect the examination's validity. 36 RR 146.

Boettcher then returned to the Mosqueda house to search for money and drugs, but found nothing. 35 RR 129, 139. Then, according to Boettcher, they returned to their apartment and cleaned up, then drove Mosqueda's Corvette to downtown Dallas where they partied into the early morning hours. 35 RR 127, 150-157. They returned to their apartment, slept for a few hours, then left in Cantu's car at about midday on November 4 for a preplanned trip to visit Boettcher's mother and stepfather in Arkansas. 35 RR 157-160. Boettcher did not tell her mother or stepfather (who was a retired police officer) or anyone else about the murders, and made no effort to call the police during their two-day stay in Arkansas, despite the fact that there were several times she was not with Cantu. 36 RR 19, 26, 27, 79-81. On November 7, Boettcher and Cantu returned to Dallas. 35 RR 168. On November 8, immediately after learning that Cantu had been arrested for capital murder and was in police custody, Boettcher called her stepfather in Arkansas, stating, "I'm scared to death they are going to kill me. Get me out of here." 35 RR 183; 36 RR 139. Once back in Arkansas, Boettcher agreed to testify against Cantu. 35 RR 196-198.

During a search of Cantu's and Boettcher's apartment on November 7, police found a box of .380 bullets and some keys, including the key to Amy Kitchen's Mercedes and a key that unlocked the door from the garage to the Mosqueda/Kitchen home; police also found a pair of jeans and some white socks in the kitchen trashcan. SX 105; SX 1; 33 RR 100, 102. Subsequent DNA testing indicated that the jeans and socks had Mosqueda's and Kitchen's blood on them. 37 RR 185, 186.

But trial counsel failed to scrutinize telephone records admitted into evidence at trial showing that a long-distance telephone call was made from Cantu's apartment at 8:53 p.m. on November 4. *See* SX 119; 37 RR 57. This evidence indicated that someone else had access to Cantu's apartment long after he and Amy Boettcher had left for Arkansas, supporting the conclusion that Cantu was framed by rival drug dealers truly responsible for James Mosqueda's murder.[16] But the jury did not hear this.

Likewise, trial counsel failed to cross-examine State's witnesses regarding toll tag records showing that James Mosqueda's Corvette was driven at 11:15 a.m. on November 4, possibly after Cantu and Boettcher had left for Arkansas. *See* SX 117, 188; 37 RR 41-53; 36 RR 25 (Boettcher's testimony that they left for Arkansas sometime between 11 a.m. and noon on November 4). Boettcher gave no explanation for this toll tag hit in her testimony; according to her testimony, the last time they drove the Corvette was about 6:30 that morning, when they arrived back at the apartment from downtown Dallas. 35 RR 158-159. At the very least, the discrepancy indicated that someone else besides Cantu could have driven the Corvette before it was discovered by law enforcement on November 5 in the parking lot of Cantu's apartment complex,[17] again supporting the conclusion that Cantu was

---

[16] The lead detective in the case testified at trial that police had received an anonymous tip during the course of the investigation that Mosqueda had owed Mario Rojas, a rival drug dealer, a large sum of money for drugs. 33 RR 186; 34 RR 119-121.

[17] Significantly, police conducting an emergency search of Cantu's apartment on the evening of November 4 did not see Mosqueda's Corvette, which according to State's witnesses was found the next day parked in close proximity to Cantu's apartment.

set up as the fall guy for a drug-business hit. But trial counsel failed to capitalize on these critical discrepancies in the State's case, discrepancies that would have seriously undermined the physical evidence relied upon by the State to corroborate the testimony of Amy Boettcher.

Trial counsel also failed to probe an obvious inconsistency between the testimony of two of the State's expert witnesses: medical examiner Dr. William Rohr and blood-spatter expert Paulette Sutton. Ms. Sutton opined, based on her examination of *photos* of the crime scene (she did not actually view the crime scene), that Amy Kitchen had been kicked or punched in the face with enough force to spray a large amount of blood over the wall behind the bed. 37 RR 212-215. But Dr. Rohr, who performed autopsies on the victims' bodies, apparently found no evidence of any injuries to the victims apart from the gunshot wounds (aside from a small contusion on James Mosqueda's right shoulder). *See* SX 157, 158, 159, 160. But trial counsel did not even cross-examine Dr. Rohr, 37 RR 130, and his examination of Ms. Sutton consisted of about a page and a half and did not touch upon her testimony's inconsistency with the autopsy reports. 37 RR 228-229.

Trial counsel further rendered deficient performance by failing to even interview Tawny Svihovec, Cantu's ex-girlfriend, at whose apartment police found the murder weapon and who apparently did not believe Cantu was involved in the murders (and who the State did not call as a witness); by failing to question State's witnesses regarding whether Cantu's face was swollen when they saw him during the early morning hours of November 4 in order to impeach Amy Boettcher's testimony to that effect; by failing to question State's witnesses

who testified they saw Amy Boettcher wearing Amy Kitchen's engagement ring (on her left hand) regarding whether they also noticed any injury or swelling to that hand, which Amy Boettcher and other witnesses testified was the result of an assault by Cantu that took place the night before.

Obviously, the extent to which these omissions on counsel's part were governed by a reasoned trial strategy is crucial. *See Richards v. Quarterman*, 566 F.3d at 566 (quoting *Loyd v. Whitley,* 977 F.2d 149, 158 (5th Cir. 1992)). But there is simply no conceivable strategy that would have supported these omissions, which clearly constitute a significant departure from prevailing professional norms. Counsel's failure to request an investigator in the defense of a capital murder charge standing alone constitutes deficient performance.

Finally, to further aggravate counsel's failure to effectively rebut the State's case, trial counsel stood in front of the jury during final argument at the guilt-innocence phase of trial and repeatedly conceded Cantu's complicity in the murders, arguing only that he was technically not guilty of capital murder. 41 RR 31 ("I didn't say he was innocent. I said he's not guilty of capital murder"), 33 ("I'm not saying he's innocent. He's not guilty of capital murder."), 43 ("there's nothing I can tell you that the murder of Amy Kitchens (sic) was not intentional"), 45 ("He's not innocent, but he's not guilty of capital murder"), 46 ("you're not saying he's innocent. You're saying . . . it's not capital murder"). And the State was quick to capitalize on counsel's concessions in its own closing argument. *See* 41 RR 55 ("His own attorney concedes it. I mean, his own attorney argued – it's already made him the killer. . . .

-49-

You look at the killing that Mr. Goeller has already conceded, and you find some way one of those cases is not intentional.").

It is true that an attorney's concession of his client's guilt at argument without that client's express consent does not automatically render counsel's performance deficient. *Florida v. Nixon*, 543 U.S. 175, 192 (2004). And in certain cases, it can be a valid strategic decision. *Id.* at 190-191. But for a trial strategy to be deemed reasonable, it must be based on a thorough investigation. *Wiggins v. Smith*, 539 U.S. 510, 521-522 (2003). Trial counsel's decision to concede guilt was not based on a truly thorough investigation. In a case such as this, where there was ample evidence to argue in support of your client's innocence, such a concession certainly fell below the bounds of reasonably professional assistance.

Trial counsel's many failures amounted to deficient performance, and had trial counsel performed differently, there is a reasonable likelihood that at least one juror would have found a reasonable doubt as to Cantu's guilt and voted "not guilty." At the very least, this claim meets the threshold showing of substantial merit required by *Martinez* to necessitate merits review.

## **CONCLUSION**

For the foregoing reasons, Cantu respectfully requests that the Court review the merits of his claim of ineffective assistance of trial counsel. Furthermore, because pre-*Martinez* circuit precedent precluded any substantive review of either Cantu's underlying claim of trial-counsel ineffectiveness or his assertion of cause based on state-habeas-counsel ineffectiveness, Cantu has never had an opportunity to factually develop these claims. Therefore, this Court should conduct an evidentiary hearing regarding the performance of both state habeas counsel and trial counsel.

Respectfully submitted,

/s/
_____
GENA BUNN
Attorney for Petitioner
HOLMES & MOORE, P.L.L.C.
P.O. Box 3267
Longview, Texas 75606
Telephone:    (903) 758-2200
Fax No.        (903) 758-7864

## CERTIFICATE OF SERVICE

On this 31st day of August, 2012, I do certify that a true and correct copy of the foregoing Brief was sent via electronic filing to counsel for the Director, Assistant Attorney General Thomas Merrill Jones.

/s/ _____

GENA BUNN