## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN D1IVISION

| | | |
|---|---|---|
| IVAN A. CANTU, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 2:06-cv-166 |
| | § | (Death Penalty Case) |
| RICK THALER, Director, Texas | § | U.S. Dist. Judge Richard A. Schell |
| Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## RESPONDENT THALER'S BRIEF ON REMAND
## REGARDING *MARTINEZ V. RYAN*

Cantu, a Texas death-row inmate, challenges his conviction and sentence in these federal habeas proceedings. See 28 U.S.C. § 2254 (West 2012). After direct and collateral state review and collateral federal review, which included appellate review, the parties have been asked to brief the applicability to Cantu's litigation of a recent Supreme Court decision, *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). *Martinez* offers no relief. First, because under Texas law, a defendant may raise and receive merits review of a trial-related ineffective-assistance claim on appeal, the exception carved out by *Martinez* does not apply. Second, because the trial-related ineffective-assistance claim is not "substantial," Cantu cannot show cause to excuse default.

# STATEMENT OF THE CASE

Cantu was convicted and sentenced to death for the murders of his cousin James Mosqueda and Mosqueda's fiancee, Amy Kitchens. (8 CR[1] 1434–35.) The Court of Criminal Appeals affirmed the conviction and sentence, *Cantu v. State*, No. 74,220, 2004 WL 3093156 (June 30, 2004), and Cantu sought no certiorari review. The state court denied his application for habeas corpus relief. *Ex parte Cantu*, No. WR-63624-01, 2006 WL 120829 (Tex. Crim. App. Jan. 18, 2006). After this Court also denied habeas corpus relief, *Cantu v. Quarterman*, No. 2:06cv166, 2009 WL 728577 (March 17, 2009), the decision was affirmed by the Fifth Circuit, *Cantu v. Thaler*, 632 F.3d 157 (2011). In light of *Martinez*, the Supreme Court granted certiorari, vacated the lower court's judgment, and remanded to the Fifth Circuit for reconsideration. *Cantu v. Thaler*, 132 S. Ct. 1791 (2012). The Fifth Circuit in turn remanded the case to this Court. *Cantu v. Thaler*, 682 F.3d 1053 (2012). This Court ordered the parties to brief the issue of whether, in light of *Martinez*, this Court "must reach the merits of Cantu's ineffective assistance of trial counsel claims." (ECF[2] No. 43 at 2.) Cantu has filed his brief (ECF No. 48), and the Director here responds.

---

[1] "CR" refers to the clerk's record of papers filed in the trial court preceded by the volume number and followed by the page number.

[2] "ECF" refers to the documents filed in the district court's electronic case filing system, followed by the document number and, where appropriate, the page number.

# CANTU'S ALLEGATION

Cantu alleges he received ineffective assistance when trial counsel failed to investigate and present evidence of his actual innocence. (Br. for Appellant, Ivan Cantu (Appellant's Br.) at 20–37, *Cantu v. Quarterman*, No. 09-70017 (5th Cir. Aug. 21, 2009).) This Court determined that because Cantu failed to raise the issue with the state courts, the issue was defaulted. *Cantu v. Quarterman*, 2009 WL 728577, at *9–*10. The appellate panel agreed. *Cantu v. Thaler*, 632 F.3d at 165–65. At issue now is whether, in light of *Martinez*, this Court must excuse the default and must review the claim on the merits.

# ARGUMENT

## I. Because under Texas Law a Defendant May Raise an Ineffective-assistance Claim on Appeal, the *Martinez* Exception Does Not Apply.

If a state prisoner wishes to avoid the procedural bar in federal habeas proceedings, he may do so by showing cause for the default and actual prejudice attributable to the default. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The existence of cause for a default turns on whether the prisoner can show that some factor external to the defense impeded his efforts to comply with state procedure. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Ineffective assistance of counsel can constitute such cause. *Id.* But ordinarily because a petitioner has no constitutional right to counsel in state postconviction proceedings, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), the performance of counsel in state habeas

proceedings cannot, for default purposes, constitute cause. *See Coleman*, 501 U.S. at 752.

In *Martinez*, however, the Supreme Court carved out an exception. For default purposes, the state habeas counsel's performance can constitute cause where (1) state rules prevent a petitioner from raising a trial-related ineffective-assistance claim in any proceedings except the initial postconviction proceedings and (2) the claim is "substantial." *See* 132 S. Ct. at 1320.

The Supreme Court noted that Arizona, the state at issue in *Martinez*, excluded trial-related ineffective-assistance claims from the direct review process, where counsel is constitutionally guaranteed, to the state habeas process, where it is not. *Id.* at 1318. Arizona's choice lessened a prisoner's ability to file such a claim because an uncounseled prisoner was likely "unlearned in the law" and unable to "comply with the State's procedural rules." *Id.* at 1315, 1317, 1318. Using its powers of equity, the Court imposed a consequence for Arizona's choice: Where a prisoner failed to assert an ineffective-assistance claim in initial state habeas proceedings—the "'one and only'" forum that Arizona provided for hearing such a claim—and where the prisoner later raised the claim in federal proceedings, the state could not assert default. *Id.* at 1315, 1318 (quoting *Coleman*, 501 U.S. at 756).

Texas law differs from that of Arizona. While Arizona bars a prisoner from raising an ineffective-assistance-of-trial-counsel claim on direct review, *see State v. Spreitz*, 39 P.3d 525, 527 (2002), Texas has no such limit.

Arizona adopted its current restriction after experimenting with a different system. Under a previous rule, prisoners could combine their trial-related ineffective-assistance claims with their appeals. *See, e.g., State v. Valdez*, 770 P.2d 313, 319 (Ariz. 1989). The system, however, led to delays. For example, if an ineffective-assistance claim required factual development, the reviewing court would remand the case to trial court for a hearing, *see State v. Watson*, 559 P.3d 121, 136 (Ariz. 1976), even where other appellate claims could be resolved on grounds of "preclusion or waiver," *Spreitz*, 39 P.3d at 526. In the end, the state supreme court found the system unworkable. *See Krone v. Hotham*, 890 P.2d 1149, 1151 (Ariz. 1995).

Thus, the state Supreme Court adopted its current rule. Under that rule, an ineffective-assistance claim challenging trial counsel will receive a merits review only if the claim is raised in postconviction proceedings. *See Spreitz*, 39 P.3d at 527. If a prisoner raises such a claim on appeal "improvidently," the reviewing court will not address the claim. *Id.* But such an inappropriate presentation will not preclude the prisoner from raising the claim in postconviction proceedings. *Id.*

Although the United States Supreme Court recognized that the Arizona court had "sound reasons" for instituting its bright-line rule, the state court's decision was not without consequences. *See Martinez*, 132 S. Ct. at 1318. Where a state limits such a claim to collateral proceedings, which a prisoner normally pursues without a constitutional right to counsel, and where the prisoner does not properly present his substantial ineffective-assistance claim in those collateral proceedings, the state cannot later assert a default defense. *See Ibarra v. Thaler*, 687 F.3d 222, 226 (5th Cir. 2012).

Under the Constitution, on an appeal of right, a prisoner has a right to counsel. *See Douglas v. California*, 372 U.S. 353, 357–58 (1963). Where a state allows a prisoner to raise trial-related ineffective-assistance claims in appeal, the prisoner can be assured of having the aid of constitutionally effective appellate counsel to raise the issue. *See Martinez*, 132 S. Ct. at 1317. And where appellate counsel proves ineffective, the prisoner may, in collateral proceedings, complain of such ineffectiveness. *See Smith v. Murray*, 477 U.S. 527, 535–36 (1986). But just as where constitutionally effective counsel has never been guaranteed for a discretionary appeal, so has it never been guaranteed where a prisoner sues to overturn a presumptively valid judgment. *See Finley*, 481 U.S. at 555. The Supreme Court has never determined that the Equal Protection Clause entitles all prisoners to equal legal resources. *Id.* at 556.

But where a state limits such claims to collateral proceedings, the equities shift. *See Martinez*, 132 S. Ct. at 1317. The state is, in effect, forcing the petitioner into a forum where he is not guaranteed counsel. *See id.* And where the state so limits a prisoner, *Martinez'*s equitable remedy applies. *See Ibarra*, 687 F.3d at 226.

Because Texas has no such rule, the equities implicated by *Martinez* are of no moment. Texas rules and statutes allow the individual to raise such claims not only in collateral proceedings but on appeal or in a new-trial motion, both proceedings in which constitutionally effective counsel are guaranteed. Indeed, under Texas law, after the trial court imposes a death sentence, the prisoner is given two new independent attorneys, one for appeal, one for habeas proceedings, each of which may raise issues of trial counsel's effectiveness. State statute requires the trial court as "soon as practicable after a death sentence is imposed" to appoint counsel to represent an indigent defendant on appeal and, if appropriate, to apply for certiorari review. Tex. Code Crim. Proc. art. 26.052(j) (West 2012). The appointed counsel must have extensive appellate practice, including significant experience in capital appeals, and must meet other competency requirements. Art. 26.052(d)(3). And unless the defendant and trial counsel on the record request that trial counsel be reappointed for the appeal and unless the trial court finds good cause for such reappointment, the trial

court may not reappoint trial counsel for the appeal. Art. 26.052(k). Such a change of counsel ensures that the newly appointed appellate attorney will be free to evaluate the performance of trial counsel. Art. 26.052(k).

State statutes further require that immediately after judgment is entered on a death sentence, the trial court must hold a hearing to determine whether the prisoner wishes the appointment of state habeas counsel. Tex. Code Crim. Proc. art. 11.071, § 2(b) (West 2012). Not less than thirty days after the convicting court finds that the prisoner wants appointed habeas counsel, the court must appoint one or more such attorneys. Art. 11.071, § 2(c).

The Legislature also has established an Office of Capital Writs to ensure that capital prisoners receive competent counsel in their state habeas proceedings. *See* Tex. Gov't Code § 78.054 (West 2012). The State authorizes and funds the office to hire a permanent staff that includes both competent attorneys and licensed investigators. Sec. 78.053(b). For prisoners such as Cantu who were sentenced before the office's creation in 2009 or for prisoners that the office cannot for other reasons represent, the trial court appoints new private counsel who meets competency requirements. *See* art. 11.071 § 2(f); Sec. 78.056(a).

Further, a prisoner's habeas application must be filed within 180 days of habeas counsel's appointment or forty-five days after the State files its appellate brief, whichever is later. *See* art. 11.071, § 4(a). As a practical matter, the habeas

application will be filed before the decision of the Court of Criminal Appeals on direct review and before the applicant's petition for writ of certiorari. Hence, at least two independent attorneys, appellate counsel and habeas counsel, will be able to challenge the actions of trial counsel before the prisoner loses his constitutional right to counsel at the conclusion of direct review.

The Texas rules also provide the tools for developing and raising ineffective-assistance claims on direct review. Before the appeal of a death sentence is transferred automatically to the Court of Criminal Appeals, *see* Tex. Code Crim. Proc. art. 37.071, § 2(h) (West 2012), defense counsel may move for a new trial. *See* Tex. R. App. P. 21. In the motion proceedings, the convicting court, to adduce facts not in the trial record, can take evidence by affidavit or otherwise. *See* Rule. 21.7. If the motion raises matters—including ineffective-assistance allegations—that cannot be determined from the trial record, the convicting court must hold a hearing. *See Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006).

For example, a death-sentenced prisoner can use new-trial procedures to develop evidence regarding trial counsel's failure to investigate and present mitigating evidence at punishment. *See Armstrong v. State*, No. AP–75706, 2010 WL 359020, at *5–*6 (Tex. Crim. App. Jan. 27, 2010). Another used the new-trial proceedings to develop evidence that counsel failed to develop and present

mitigating evidence. *See Milburn v. State*, 15 S.W.3d 267, 269–70 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Yet another used new-trial proceedings to produce affidavits, followed by a live evidentiary hearing, regarding trial counsel's strategic decisions. *See Morales v. State*, 217 S.W.3d 731, 734–35 (Tex. App.—El Paso 2007), *rev'd*, 253 S.W.3d 686 (Tex. Crim. App. 2008). Indeed, the Court of Criminal Appeals is explicit: A habeas corpus proceeding "is not the only mechanism for developing an ineffectiveness claim." *State v. Jones*, No. 678-02, 2004 WL 231309, at *8 (Tex. Crim. App. Jan. 28, 2004). An increasing number of cases, the court said, develop the necessary record by using new-trial proceedings. *Id.*, at 2004 WL 231309, at *8.[3]

---

[3] *See, e.g., Holden*, 201 S.W.3d at 764; *McFarland v. State*, 928 S.W.2d 482, 499–507 (Tex. Crim. App. 1996) (abrogated on other grounds by *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998)); *Garcia v. State*, 887 S.W.2d 862, 880–81 (Tex. Crim. App. 1994) (abrogated on other grounds by *Hammock v. State*, 46 S.W.3d 889 (Tex. Crim. App. 2001)); *Motley v. State*, 773 S.W.2d 283, 290–92 (Tex. Crim. App. 1989); *Butler v. State*, 716 S.W.2d 48, 55–57 (Tex. Crim. App. 1986); *State v. Bennett*, No. 05-11-00252-CR, 2012 WL 11181, at *1 (Tex. App.—Dallas Jan. 4, 2012, no pet.); *State v. Mayfield*, Nos. 14-09-00357-CR, 14-09-00358-CR, 2010 WL 2373274, at *10–14 (Tex. App.—Houston [14th Dist.] June 15, 2010, no pet.); *Pratt v. State*, No. 04-09-00070-CR, 2010 WL 546529, at *5–*9 (Tex. App.—San Antonio Feb. 17, 2010, pet. ref'd); *State v. Choice*, 319 S.W.3d 22, 23 (Tex. App.—Dallas 2008, no pet.); *Rosa v. State*, Nos. 05-04-00558-CR, 05-04-00571-CR, 2005 WL 2038175, at *2–*4 (Tex. App.—Dallas Aug. 25, 2005, pet. ref'd); *State v. Medina*, No. 03-02-00572-CR, 2003 WL 21939417, at *2 (Tex. App.—Austin Aug. 14, 2003, pet. ref'd); *State v. Papay*, No. 05-01-01124-CR, 2002 WL 176359, at *4 (Tex. App.—Dallas Feb. 5, 2002, pet. ref'd); *State v. Kelley*, 20 S.W.3d 147, 155 (Tex. App.—Texarkana 2000, no pet.); *State v. Pilkinton*, 7 S.W.3d 291, 293 (Tex. App.—Beaumont 1999, pet. ref'd); *State v. Gill*, 967 S.W.2d 540, 543 (Tex. App.—Austin 1998, pet. ref'd); *Howard v. State*, 894 S.W.2d 104, 109 (Tex. App.—Beaumont 1995, pet. ref'd); *State v. Thomas*, 768 S.W.2d 335, 337 (Tex. App.—Houston [14th Dist.] 1989, no pet.).

Recognizing the importance of such new-trial proceedings, state law has determined that in such proceedings counsel is constitutionally guaranteed. *Cooks v. State*, 240 S.W.3d 906, 911 (Tex. Crim. App. 2007). In fact, counsel's failure to take advantage of such proceedings can itself lead to an ineffective-assistance claim. *See Rogers v. State*, No. 14-09-00665-CR, 2011 WL 7290492, at *2–*4 (Tex. App.—Houston [14th Dist.] Feb. 8, 2011, no pet.) (abating appeal to allow defendant to present facially plausible ineffective-assistance claim in new-trial motion where defendant denied counsel to present such motion); *Prudhomme v. State*, 28 S.W.3d 114, 121 (Tex. App.—Texarkana 2000, no pet.) (abating appeal and remanding to trial court for new-trial motion where defendant deprived of counsel during the new-trial motion period); *Massingill v. State*, 8 S.W.3d 733, 737–38 (Tex. App.—Austin 1999, no pet.) (abating appeal, remanding to trial court for hearing on new-trial motion where defendant denied counsel during new-trial motion period).

And while new-trial proceedings allow a defendant to develop a posttrial record, such proceedings are not required before a defendant raises an ineffective-assistance claims on appeal. The state courts can and do review on the merits such claims on appeal. *See, e.g., Holberg v. State*, 38 S.W.3d 137 (Tex.

Crim. App. 2000) (full text on Westlaw only; abrogation on other grounds recognized by *Meadoux v. State*, 325 S.W.3d 189 (Tex. Crim. App. 2010)).[4]

Practically speaking, raising an ineffective-assistance claim in a new-trial motion or on appeal inures to the defendant's benefit. If the claim fails on appeal for lack of evidence, he may reassert the claim in collateral proceedings, perhaps with additional evidence. *See Rylander v. State*, 101 S.W.3d 107, 111 n.1 (Tex. Crim. App. 2003); *Thompson v. State*, 9 S.W.3d 808, 814–15 (Tex. Crim. App. 1999).

A panel of this circuit already has determined that the *Martinez* exception does not apply to the Texas system. *See Ibarra*, 687 S.W.3d at 227. Other circuits and district courts also have interpreted *Martinez* narrowly, applying the exception only where the state limits ineffective-assistance claims to

---

[4] *See, e.g., Gobert v. State*, No. AP–76345, 2011 WL 5881601, at *10–*11 (Tex. Crim. App. Nov. 23, 2011); *Fratta v. State*, No. AP–76188, 2011 WL 4582498, at *13 (Tex. Crim. App. Oct. 5, 2011); *Medina v. State*, No. AP-76036, 2011 WL 378785, at *15 (Tex. Crim. App. Jan. 12, 2011); *Skinner v. State*, 293 S.W.3d 196, 202–03 (Tex. Crim. App. 2009); *Mata v. State*, 226 S.W.3d 425, 432–33 (Tex. Crim. App. 2007); *Shore v. State*, No. AP–75049, 2007 WL 4375939, at *15 (Tex. Crim. App. Dec. 12, 2007); *Phillips v. State*, 992 S.W.2d 491, 494–95 (Tex. Crim. App. 1999); *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992); *Gish v. State*, No. 02-09-00034-CR, 2011 WL 167076, at *3–*6 (Tex. App.—Fort Worth Jan. 13, 2011, no pet.); *Smith v. State*, No. 05-08-01115-CR, 2010 WL 3245438, at *5–*6 (Tex. App.—Dallas Aug. 18, 2010, pet. ref'd); *Curnel v. State*, No. 2-08-308-CR, 2010 WL 323557, at *6–*7 (Tex. App.—Fort Worth Jan. 28, 2010, pet. ref'd); *Alexander v. State*, Nos. 09-08-00372-CR, 09-08-00373-CR, 2009 WL 4681369, at *6 (Tex. App.—Beaumont Dec. 9, 2009, pet. ref'd); *Bergara v. State*, No. 14-07-00938-CR, 2009 WL 2476513, at *12–*14 (Tex. App.—Houston [14th Dist.] Aug. 13, 2009, pet. ref'd); *Gonzalez v. State*, No. 04-07-00804-CR, 2008 WL 5083125, at *4 (Tex. App.—San Antonio Dec. 3, 2008, pet. ref'd).

postconviction proceedings. *See Dansby v. Hobbs*, No. 10-1990, 2012 WL 3870571, at *3 (8th Cir. Sept. 7, 2012) (finding *Martinez* not applicable where Arkansas law allows prisoner to raise ineffective-assistance claim on appeal); *Banks v. Workman*, No. 10–5125, No. 2012 WL 3834733, at *12–*13 (10th Cir. Sept. 5, 2012) (same; interpreting Oklahoma law); *Gill v. Atchison*, No. 11 C 7868, 2012 WL 2597873, at *5 (N.D. Ill. July 2, 2012); *Arthur v. Thomas*, No. 2:01–CV–0983–LSC, 2012 WL 2357919, at *9 (N.D. Ala. June 20, 2012).

Hence, the system followed in Texas—allowing a defendant to raise trial-related ineffective-assistance claims in a new-trial motion, on appeal, or in habeas proceedings—takes the state out of the exception carved out in *Martinez*.

## II. Cantu Can Show No Cause to Excuse Default.

But even were it assumed that a court found the Texas and Arizona systems so similar as to leap the first *Martinez* hurdle, that is, limiting trial-related ineffective-assistance claims to collateral proceedings only, Cantu cannot leap the second hurdle: Because his ineffective-assistance-of-trial-counsel claim is not substantial, he can show no cause to excuse default. *See* 132 S. Ct. at 1318. The claim can be shown to be insubstantial by showing (1) that the trial-counsel effectiveness claim (a) does not have any merit or (b) is wholly without factual support, or (2) that the state habeas counsel did not perform below constitutional standards. *See id.* at 1319. And although "cause" arises from the actions or

omissions of state habeas counsel, the reasonableness of state habeas counsel's actions and the question of prejudice are evaluated by the actions or omissions of trial counsel. Put another way, if trial counsel was effective, state habeas counsel cannot be faulted for forgoing a complaint.

A petitioner raising an ineffective-assistance claim must show (1) that trial counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show counsel delivered deficient performance, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. *See id.* at 687–88. A reviewing court must be "highly deferential" to counsel's conduct. *See id.* at 689. A reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See id.* at 690. The petitioner must overcome the presumption that under the circumstances the challenged action might be considered sound trial strategy. *See id.* In fact, a "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *Lave v. Dretke*, 416 F.3d 372, 380 (5th Cir. 2005).

But a reviewing court need not consider the deficiency prong if it concludes that the petitioner has shown no prejudice. *Strickland*, 466 U.S. at 697.

Moreover, the petitioner may not simply allege, but must "affirmatively prove" prejudice. *Id.* at 693. To show prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Cantu must do more than show that an innocence-based defense was reasonable. Cantu must show that such a defense was, under *Strickland*, required, that such a defense was the only defense reasonable.

### A. Cantu alleges that trial counsel should have investigated certain evidence that would have proved him innocent.

#### 1. Trial evidence shows that Cantu shot and killed his cousin and his cousin's girlfriend.

Because Cantu's allegation raises the issue of his actual innocence, this pleading will review the facts of the crime as recited by this Court:

> Cantu lived with Amy Boettcher in an apartment not far from his cousin, James Mosqueda, who lived with Amy Kitchen. At approximately 11:20 pm on the night of November 3, 2000, Cantu called Mosqueda and asked if he could come to Mosqueda's house and see him. Cantu told Boettcher that he was going to Mosqueda and Kitchen's house to kill them, but Boettcher did not believe him. When he left the apartment, Cantu had his gun with him. When he returned to the apartment around 12:20 a.m., his face was swollen and he had what looked like blood on his jeans and in his hair. He told Boettcher that "it wasn't pretty" and began unloading his gun, complaining that it had jammed on him. He had Mosqueda's and Kitchen's identification and car keys. Boettcher threw Cantu's bloody jeans in the kitchen trash can. After Cantu cleaned up, he made Boettcher return with him to the victims' house to see what

he had done. They drove Kitchen's Mercedes. Boettcher could see the victims' bodies through the doorway to the master bedroom. While at the house, Cantu gathered things he had left at the house, and searched the house for drugs and/or money. They parked the Mercedes in the garage and left in Mosqueda's Corvette. Cantu gave Boettcher a diamond engagement ring that had belonged to Kitchen.

Later that morning, Cantu and Boettcher drove to Arkansas to visit Boettcher's parents for three days. That evening, Mosqueda's and Kitchen's bodies were discovered. After speaking with Sylvia Cantu, Cantu's mother, authorities searched Cantu's and Boettcher's apartment. They later obtained a search warrant and searched it again, finding among other things the bloody jeans, ammunition, and keys to the victims' house and Kitchen's Mercedes. When Cantu and Boettcher returned from their trip, they stopped at the house of Tawny Svihovic, a former girlfriend of Cantu's. His gun was later found at that residence.

On November 7, 2000, Cantu was arrested. Shortly after he spoke to Boettcher by telephone from the police station, she flew back to Arkansas. The next day, she began cooperating with authorities investigating the killing.

*Cantu v. Quarterman*, 2009 WL 728577, at *1.

### 2. Cantu alleges that certain evidence available from the trial record suggests his innocence.

Cantu alleges the following evidence demonstrates his innocence:

· The records show that a long-distance phone call was placed from

Cantu's apartment at 8:53 p.m. on November 4. (Appellant's Br. at 33; SX[5] 119;

---

[5] "SX" refers to the numbered exhibits offered and admitted into evidence at trial by the State.

37 RR[6] 57.) Thus, he argues, someone other than Cantu had access to his apartment after he and Boettcher had left for Arkansas. Hence, it may be inferred that he was framed by the true murderers, rival drug dealers. (Br at 33.)

• Toll-road records show that Mosqueda's Corvette was driven at 11:15 a.m. on November 4, after, according to Boettcher's testimony, she and Cantu had left for Arkansas. (Appellant's Br. at 33; SX 117, 188; 37 RR 41–53; 36 RR 25.) Boettcher testified that she and Cantu had driven the Corvette at about 6:30 a.m. November 4, when they came back to Cantu's apartment from downtown Dallas. (35 RR 158–59.) She mentioned no later excursion in the Corvette. Cantu argues that the testimony suggests that someone other than he or Boettcher had driven the car before it was discovered November 5 in the parking lot of his apartment complex. (Appellant's Br. at 33–34.) Cantu notes also that when police conducted an emergency search of his apartment the evening of November 4, they did not see the Corvette. (Appellant's Br. at 34 n.5.) Trial testimony indicated that when the car was discovered the next day, it was found close to Cantu's apartment. (*Id.*)

---

[6] "RR" refers to the reporter's record of the trial testimony, preceded with the volume number and followed by the page number.

• There were inconsistencies between the testimony of the medical examiner, Dr. William Rohr, and that of prosecution blood-spatter expert, Paulette Sutton. (Appellant's Br. at 34.) Sutton said that based upon photos of the crime scene, Kitchen had been punched or kicked in the face and that the blow led to a blood spray pattern on the wall. (*Id.*; 37 RR 212–15.) But, Cantu argues, Dr. Rohr testified only that he saw gunshot wounds and a small contusion on Mosqueda's right shoulder. Dr. Rohr did not mention any blow to Kitchen's face. (Appellant's Br. at 34; SX 157, 158, 159, 160.) Cantu argues that counsel should have probed these inconsistencies in crossexamination. (Appellant's Br. at 34.)

Cantu alleges also that counsel, rejecting an innocence-based defense, performed deficiently by not—

• Interviewing Tawny Svihovic, Cantu's former girlfriend, at whose apartment police found the murder weapon. (Appellant's Br. at 35.)

• Questioning prosecution witnesses about whether Cantu's face was swollen when they saw him in the early morning hours of November 4. (*Id.*) Boettcher had so testified and if other witnesses contradicted her testimony, her credibility would have been damaged. (*Id.*)

• Questioning prosecution witnesses who testified that they saw Boettcher wearing Kitchen's engagement ring about whether they also saw injury or

swelling to the hand, which Boettcher and other witnesses said was the result of an assault by Cantu the night before. (*Id.*)

### B. Neither trial nor state habeas counsel performed deficiently.

#### 1. Cantu confessed to counsel; trial counsel was reasonable to base a defense on something other than innocence.

Counsel's choices that are made after investigating the law and the facts relevant to plausible options are virtually unchallengeable. *Strickland*, 466 U.S. at 690. The reasonableness of counsel's investigation often relies upon information given counsel by the client. *Id.* Cantu told counsel that he killed Mosqueda because his cousin had failed to pay a drug debt and killed Kitchen to eliminate a witness. (SHCR[7] 158–59.) Because Cantu confessed his guilt, trial counsel's decision not to investigate the likelihood of Cantu's actual innocence was reasonable. *See Strickland*, 466 U.S. at 690.

#### 2. As for uncalled witnesses, Cantu does not suggest the substance of the missing testimony.

As for the missing evidence, a petitioner who alleges that counsel was deficient for failing to investigate must allege with specificity what the investigation would have revealed and how it would have altered the trial's outcome. *Lockett v. Anderson*, 230 F.3d 695, 713 (5th Cir. 2000). Cantu alleges

---

[7] "SHCR" refers to the Clerk's Record of pleadings and documents filed with the state habeas court.

only that counsel should have investigated the possibility that he was actually innocent. (Mem. at 38.) Although he argues that certain witnesses should have been called to testify, or that certain testifying witnesses should have been crossexamined about certain subjects, Cantu does not allege the substance of the missing testimony. A reviewing court cannot determine whether reasonable counsel should have presented the testimony or whether the missing testimony led to prejudice. *See Strickland*, 466 U.S. at 687.

### 3. The evidence cited by Cantu does not show his innocence.

Even if Cantu had not confessed to trial counsel, the evidence cited by the petitioner does not demonstrate his innocence.[8] As for the phone call from Cantu's apartment, the record shows that when the call was made, 8:37 p.m. November 4, the police were in the apartment. (32 RR 84.) An officer testified that Cantu's mother placed a call using the phone at about that time. (32 RR 84.)

The toll-road records show at most that Mosqueda's Corvette was driven northbound on the President George Bush Tollway through the Main Lane Plaza Two at 11:15 a.m. November 4. (37 RR 46, 52.) Boettcher testified that she and Cantu left for Arkansas on that day about noon. (35 RR 158.) The Corvette was

---

[8] This Court already has determined that the evidence proffered by Cantu does not meet either the state or federal standard for showing actual innocence. *Cantu v. Quarterman*, 2009 WL 728577, at *10–*11; *see Schlup v. Delo*, 513 U.S. 298, 314–15 (1995); Tex. Code Crim. Proc. art. 11.071, § 5(a)(2) (West 2012).

found at Cantu's apartment complex (33 RR 60), which was within blocks of the toll plaza (50 RR SX 118), as was Mosqueda's home (31 RR 73). Cantu could have driven the Corvette through the plaza at that time on that date.

As for the purported inconsistency between the testimony of Dr. Rohr and that of Sutton, defense counsel noted that discrepancy to the jurors. (37 RR 227–28.) And Cantu does not suggest how the purported discrepancy suggests his innocence.

The evidence, taken at face value, does not suggest that a reasonable counsel would have been required to base a defense upon the evidence. *See Strickland*, 466 U.S. at 687–88. Nor does the evidence suggest that had counsel presented the evidence, the result of the proceeding would have been different. *See id.* at 694. Hence, the ineffective-assistance claim targeting trial counsel has no merit and therefore is not substantial. *See Martinez*, 132 S. Ct. at 1319.

And because the failure of trial counsel to base a defense upon innocence does not constitute ineffective assistance, state habeas counsel was reasonable to forgo a *Strickland* claim in collateral proceedings. *See Martinez*, 132 S. Ct. at 1319. And because the actions of state habeas counsel did not fall below the standard set out in *Strickland*, even if Texas did fall into the exception carved out by *Martinez*—and the Director argues that it does not—Cantu fails to show "cause" sufficient to avoid default. *See* 132 S. Ct. at 1319. And because Cantu

cannot show "cause," he does not avoid default, and this Court need not review his trial-related ineffective-assistance claim on the merits. *See id.*

## III. The Rule Cantu Proposes Would Enshrine a Third Trial.

Federal habeas corpus jurisprudence views the state criminal trial as the main event. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977). The Antiterrorism and Effective Death Penalty Act of 1996[9] modified the federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials." *Bell v. Cone*, 535 U.S. 685, 693 (2002). When an individual has been accused of a crime, the state trial is the time and the place set for the defendant to be tried by jurors and found either guilty or not. *Sykes*, 433 U.S. at 90.

> To the greatest extent possible all issues which bear on this charge should be determined in this proceeding: [T]he accused is in the court-room, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens.

*Id.*

The trial should not be a "'tryout on the road,' for what will later be the determinative federal habeas hearing." *Id.* Already, petitioners can view the federal habeas proceedings as a second trial after the first trial turned out not to their liking. The rule Cantu proposes, a determination of whether ineffective-

---

[9] Pub.L. 104-132, 110 Stat. 1214 (1996).

assistance claim could have been developed in new-trial or appellate proceedings, envisions a third trial, a trial to determine whether the State will be allowed to assert a default defense. Such a third trial would ill-fit the congressional intent of AEDPA, which was to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases. *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 386 (2000)).

## RECAPITULATION

The *Martinez* exception does not apply to Texas. The law of Texas, unlike that of Arizona, allows a defendant to raise his trial-related ineffective-assistance claim in new-trial motions or on appeal. Further, because the ineffective assistance claim raised by Cantu, is not, as required by *Martinez*, "substantial," Cantu cannot show cause sufficient to avoid default.

## CONCLUSION

Even in light of *Martinez*, because Cantu's ineffective-assistance claim is defaulted and because Cantu cannot avoid the default, this Court need not review the claim on the merits.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Postconviction Litigation Division


/s/ Thomas M. Jones
THOMAS M. JONES*
*Attorney-In-Charge          Assistant Attorney General
Postconviction Litigation Division
State Bar No. 00784357

P. O. Box 12548, Capitol Station
Austin, Texas  78711-2548
Ph.: (512) 936-1400
Fax: (512) 936-1280
E-mail:
Thomas.Jones@texasattorneygeneral.gov

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I do hereby certify that on September 27, 2012, I electronically filed the foregoing pleading with the Clerk of the Court for the U.S. District Court, Eastern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following attorney of record, who consented in writing to accept this Notice as service of this document by electronic means:

Counsel for Cantu

Gena Bunn
Holmes & Moore, P.L.L.C.
P.O. Box 3267
Longview TX 75606
email: gbunn@holmesmoore.com

/s/ Thomas M. Jones
THOMAS M. JONES
Assistant Attorney General
