IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| IVAN A. CANTU, #999399, | § | |
| | § | |
|     *Petitioner*, | § | |
| | § | CIVIL ACTION No. 2:06-CV-166 |
| v. | § | |
| | § | JUDGE RON CLARK |
| DIRECTOR, TDCJ-CID, | § | |
| | § | |
|     *Respondent*. | § | |

**MEMORANDUM OPINION AND
ORDER OF DISMISSAL**

Petitioner Ivan A. Cantu, a death row inmate confined in the Texas prison system, filed the above-styled and numbered petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is challenging his capital murder conviction and death sentence imposed by the 380th Judicial District Court of Collin County, Texas, in Cause Number 380-80047-01, in a case styled the *State of Texas vs. Ivan Abner Cantu*. The case was remanded by the Fifth Circuit for reconsideration, in light of new case law concerning whether Mr. Cantu received ineffective assistance of counsel at trial.

Mr. Cantu has not shown that either his state trial counsel or habeas counsel were deficient, or that any error deprived him of a fair trial. The evidence to which Mr. Cantu points is not new; it was presented at trial and a rational jury could still have found him guilty beyond a reasonable doubt. The court finds that Mr. Cantu's claim for habeas relief should be denied.

**I. PROCEDURAL HISTORY OF THE CASE**

Mr. Cantu was convicted by a jury in October 2001 for the November 4, 2000 murders of James Mosqueda and Amy Kitchen. Based on the jury's answers to the special issues required

1

by the Texas Code of Criminal Procedure Article 37.071, §§ 2(b) and 2(e), the trial court sentenced Mr. Cantu to death on October 26, 2001. Act of June 17, 1993, 73rd Leg., R.S., Ch. 781, § 1, 1993 Tex. Sess. Law Serv. 3060, 3060–61 (West) (amended 2005) (current version at TEX. CODE CRIM. PRO. ANN. art. 37.074, §§ 2(b), (e) (West 2006)). The Texas Court of Criminal Appeals affirmed the conviction. *Cantu v. State*, No. 74220, 2004 WL 3093156 (Tex. Crim. App. June 30, 2004) (not designated for publication). Mr. Cantu did not file a petition for a writ of certiorari.

Mr. Cantu filed an application for a writ of habeas corpus in the State trial court on May 24, 2004. The trial court issued findings of fact and conclusions of law recommending that relief be denied. The Texas Court of Criminal Appeals denied the application for a writ of habeas corpus "[b]ased upon the convicting court's findings and conclusions and [its] own review." *Ex parte Cantu*, No. WR-63624-01, 2006 WL 120829 (Tex. Crim. App. Jan. 18, 2006).

The present proceeding began on April 17, 2006. A petition for a writ of habeas corpus (Dkt. #9) was filed on January 18, 2007. Mr. Cantu also filed a memorandum of law in support of the petition (Dkt. #10). The Director filed a response (Dkt. #12) on June 15, 2007. Mr. Cantu filed a reply (Dkt. #13) on September 10, 2007. Mr. Cantu filed a supplemental memorandum of law (Dkt. #22) on December 22, 2008. On March 17, 2009, the Honorable T. John Ward, United States Judge for the Eastern District of Texas, denied Mr. Cantu's first, second, third, fourth, fifth and sixth claims, and dismissed his remaining claims as procedurally defaulted. *Cantu v. Quarterman*, No. 2:06cv166, 2009 WL 728577 (E.D. Tex. March 17, 2009). The ineffective assistance of counsel at trial claim that is the subject of the present opinion is claim number eight.

The Fifth Circuit affirmed the decision of this court. *Cantu v. Thaler*, 632 F.3d 157 (5th Cir. 2011). On March 26, 2012, the Supreme Court remanded the ineffective assistance of counsel at trial claim to the Fifth Circuit for further consideration in light of *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309 (2012). *Cantu v. Thaler*, 132 S. Ct. 1791 (2012). The Fifth Circuit, in turn, remanded the matter to this court in order that the court "may decide in the first instance the impact of *Martinez* on [Mr. Cantu's] contention that he had cause for his procedural default." *Cantu v. Thaler*, 682 F.3d 1053, 1054 (5th Cir. 2012). Due to the retirement of Judge Ward, the case was assigned to the Honorable Richard Schell, United States Judge for the Eastern District of Texas.

Pursuant to an order of the court, Mr. Cantu filed a brief in light of *Martinez* (Dkt. #48) on August 31, 2012. The Director, in turn, filed a brief (Dkt. #51) on September 27, 2012. Mr. Cantu filed a reply (Dkt. #52) on November 1, 2012. In the meantime, the Supreme Court issued a decision specifically finding that *Martinez* applies to Texas in *Trevino v. Thaler*, 569 U.S. ___, 133 S. Ct. 1911 (2013). Pursuant to an order of the court, Mr. Cantu filed a supplemental brief (Dkt. #56) on October 27, 2014. The Director filed a response (Dkt. #57) on November 10, 2014. Mr. Cantu filed a reply (Dkt. #58) on November 24, 2014. On May 17, 2016, after Judge Schell took senior status, this case was transferred to the undersigned.

## II. FACTUAL BACKGROUND OF THE CASE

The opinion of the Fifth Circuit summarized the factual background of the case as follows:

> Cantu lived in an apartment with his girlfriend, Amy Boettcher, near where his cousin, James Mosqueda, lived with his fiancee, Amy Kitchen. According to Boettcher's testimony, Cantu called Mosqueda on the night of November 3, 2000 at approximately 11:30 p.m., and asked if he could come over to Mosqueda and Kitchen's house. Cantu then told Boettcher that he was going to their house to kill them, but Boettcher did not believe him. Cantu left his apartment with his gun and returned an hour later driving

Kitchen's Mercedes. His face was swollen and a substance that looked like blood was on his jeans and in his hair. Cantu had Mosqueda's and Kitchen's identifications and keys. Cantu cleaned up, and Boettcher threw his bloody jeans into the trash. Cantu and Boettcher then went together to the victims' house in Kitchen's Mercedes. There, Boettcher saw both victims' bodies through the doorway to the master bedroom, while Cantu was searching the house for drugs and money. Cantu took the engagement ring that had belonged to Kitchen and gave it to Boettcher. Cantu and Boettcher left Kitchen's Mercedes parked in the garage and drove off in Mosqueda's Corvette. The couple later drove to Arkansas to visit Boettcher's parents, where they were when the bodies were discovered the following evening.

Police found no evidence of forced entry at Mosqueda and Kitchen's house. Police spoke with Cantu's mother, then searched Cantu and Boettcher's apartment. Police obtained a search warrant to search the apartment a second time and found the bloody jeans, ammunition, a key to the victims' house, and a key to Kitchen's Mercedes. Police also found Cantu's gun at his ex-girlfriend's house where Cantu and Boettcher had stopped on the way home from Arkansas. Cantu's fingerprints were found on the gun's magazine, and Mosqueda's blood was found on the gun's barrel. Police arrested Cantu for the murders.

*Cantu v. Thaler*, 632 F.3d at 160.[1]

### III. DISCUSSION AND ANALYSIS

**A.   PRIOR ANALYSIS**

**1. In 2009, this court rejected Mr. Cantu's claim on the merits and alternatively found that it was procedurally defective.**

The analysis previously employed by this court and the Fifth Circuit in rejecting claim number eight should be considered in analyzing the claim again in light of *Martinez*. Mr. Cantu argued in the original petition that his trial counsel was ineffective for failing to investigate his claims of actual innocence. In his memorandum, he presented nothing more than a conclusory two paragraph claim. *See* Memorandum (Dkt. #10-2), page 38. He complained that trial counsel failed to retain a private investigator or interview potential witnesses who could exculpate him. He did not attach any evidence in support of the claim. Indeed, he admitted that he was seeking

---

[1] This factual summary is essentially the same as the factual summary of the Texas Court of Criminal Appeals. *Cantu v. State*, No. 74220, 2004 WL 3093156, at *1 (Tex. Crim. App. June 30, 2004) (not designated for publication).

4

to find such evidence and that he would submit it when such evidence became available. At that juncture in these proceedings, the ineffective assistance of counsel claim could have been summarily rejected since Mr. Cantu offered nothing other than conclusory allegations and bald assertions, which are insufficient to support a petition for a writ of habeas corpus. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990); *Ross v. Estelle*, 694 F.2d 1008, 1011–12 (5th Cir. 1983).

Although Mr. Cantu's initial Memorandum (Dkt. # 10) did not include any evidence that could prove exculpatory, it did have an affidavit from lead trial counsel, Mr. J. Matthew Goeller, which had been submitted during the State habeas corpus proceedings.[2] Mr. Goeller began his affidavit with a four page review of all of the evidence of guilt that he uncovered during his investigation. He then provided the following discussion as to his trial strategy:

> After I became familiar with the factual allegations against Mr. Cantu, [co-counsel] Mr. High and I discussed our initial opinions regarding our defense of the case. We interviewed Ivan Cantu on several occasions, both together, and separately, in order to get his input regarding the facts and to apprize him of the information we had obtained. Initially, Cantu had lied to us about the facts of the case and his involvement, taking the position that he knew nothing about the murders. Cantu thereafter changed his recollection of his involvement in the murders. Cantu refused to participate in any psychological mitigation strategies--Cantu wished to focus on the guilt/innocense [sic] stage, despite overwhelming evidence of his guilt in the murder of Mosqueda and Kitchen. Throughout my representation, Cantu displayed animosity toward myself and Mr. High because of strategy designed to defeat the "future dangerousness" special issue in the punishment phase of the trial. Cantu, despite his ultimate recognition of the evidence against him, continuously advanced his demand that "we try this case to obtain a not guilty." Cantu repeatedly questioned our punishment phase preparation, stating that our punishment phase strategy was premised on "losing" the guilt-innocense [sic] phase of the trial.

*See* Memorandum, Exhibit B (Dkt. #10-4), page 6.

In the remainder of the affidavit, Mr. Groeller provided a response to the claim that he was ineffective during the punishment phase of the trial.

---

[2] The state trial court had ordered Mr. Goeller to submit the affidavit in the state habeas proceeding and had overruled Mr. Goeller's objection to having to provide the affidavit.

Some of this information goes to both trial strategy and tactics as well as the punishment phase. Mr. Goeller describes the twenty-four motions he and Mr. High filed and obtained rulings on, their jury selection strategy of attempts to pick jurors who would be receptive to their mitigation arguments, and their presentation of a mitigation specialist, a psychologist to testify Mr. Cantu would not be dangerous in prison, and a convicted murderer who had become a minister.

In discussing his efforts to develop psychiatric-based mitigating evidence, Mr. Goeller stated that Mr. Cantu admitted to him "that he had indeed killed Mosqueda for 'ripping him off' on a drug deal, and Kitchen just happened to be at the Mosqueda home, and that '[he] didn't wish to leave any witnesses.'" *Id.* at 9.

On August 7, 2008, Judge Ward granted Mr. Cantu's motion to substitute counsel. (Dkt. # 20). Through this new counsel, Mr. Cantu subsequently filed a supplement to his memorandum of law (Dkt. #22). He claimed that had his attorneys conducted a reasonable investigation, they would have uncovered evidence of his innocence and that no rational juror could have found him guilty beyond a reasonable doubt. He contends that such investigation would have revealed the following:

    1.    A long distance telephone call was made from Mr. Cantu's apartment at 8:37 p.m. on November 4, 2000, yet he and Amy Boettcher had left for Arkansas between 11 a.m. and noon;

    2.    Toll tag records show that James Mosqueda's Corvette was driven at 11:15 a.m. on November 4, 2000, possibly after Cantu and Boettcher had left for Arkansas; and

    3.    Blood spatter expert Sutton testified that based upon her examination of photos of the crime scene that Amy Kitchen had been kicked or punched in the face with enough force to spray a large amount of blood over the wall behind the bed, but Dr. Rohr's report contains no notation of any injury to her head except the gunshot wound.

Mr. Cantu argued that this evidence was strong enough to entitle him to a stay and to file a successive application for post-conviction relief in State court.

Judge Ward's original memorandum opinion denying habeas relief initially discussed the merits of Mr. Cantu's claim number eight in order to determine whether the Texas Court of Criminal Appeals would refuse to consider the merits in a successive State application for post-conviction relief. (Dkt. # 30, pgs. 16–18). The court made the following findings:

> The Court finds that even with this evidence, a rational juror could have found beyond a reasonable doubt that Cantu was guilty of killing Mosqueda and Kitchen. The fact that another person had access to Cantu's house would not lead a rational person to disbelieve the evidence that he committed the murders. Similarly, a rational juror would likely conclude that it was Cantu himself who drove Mosqueda's car at 11:15 am on November 4, 2000, and that he left for Arkansas shortly thereafter. Finally, although Cantu is correct that Rohr's autopsy report does not mention that Kitchen suffered any facial trauma other than the gunshot wound, the trauma is clearly evident in the autopsy photos themselves. A rational juror would likely conclude that Dr. Rohr's autopsy report on Kitchen was less detailed than it could have been, not that Cantu did not kill her.
>
> The Court finds that it is entirely clear that the state court would refuse to consider the merits of this claim if it were presented in a successive state petition for post-conviction relief. Accordingly, the Court will treat this claim as if the state court refused to hear it on procedural grounds.

*Cantu v. Quarterman*, 2009 WL 728577, at *10.

Addressing Mr. Cantu's argument that the failure to present this claim at the state trial court was due to ineffective assistance of counsel, Judge Ward noted that "the Court has already rejected Cantu's actual innocence arguments in the context of the successive petition issue . . . ." *Cantu v. Quarterman*, 2009 WL 728577, at *11.

**2. In 2011, the Fifth Circuit affirmed the denial of habeas relief on claim 8.**

On appeal, the Fifth Circuit affirmed Judge Ward's decision and held that Mr. Cantu had not shown "how this evidence proves his innocence by a preponderance of the evidence." *Cantu v. Thaler*, 632 F.3d at 165.

7

The Court also affirmed Judge Ward's holding that the ineffective assistance of counsel claim was procedurally defaulted and that "the state court would clearly refuse to consider the merits of this claim if it were now presented in a successive state petition for post-conviction relief under § 5(a)(2)." *Id.* at 166.

**B.    ANALYSIS ON REMAND IN LIGHT OF *MARTINEZ***

**1. *Martinez* and *Trevino* permit habeas review of some ineffective assistance of counsel claims from Texas courts.**

When Judge Ward considered Mr. Cantu's Petition in 2009, there was no question that his eighth ground for relief was foreclosed as unexhausted and procedurally barred. However, in 2012 (after the Fifth Circuit had affirmed Judge Ward's ruling), the Supreme Court opened the door for a showing of cause and prejudice to excuse such a procedural default in *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309 (2012). In *Martinez*, the Supreme Court answered a question left open in *Coleman*: "whether a prisoner has a right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." 566 U.S. at ___, 132 S. Ct. at 1315. These proceedings were referred to as "initial-review collateral proceedings." *Id.* The Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at ___, 132 S. Ct. at 1320.

The Supreme Court extended *Martinez* to Texas in *Trevino v. Thaler*, 569 U.S. __, 133 S. Ct. 1911 (2013). Although Texas does not preclude appellants from raising ineffective assistance of trial counsel claims on direct appeal, the Court held that the rule in *Martinez* applies because "the Texas procedural system - as a matter of its structure, design, and operation - does not offer

most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal." *Trevino*, 569 U.S. at ___, 133 S. Ct. at 1921. The Court left it to the lower courts to determine on remand whether Trevino's claim of ineffective assistance of counsel was substantial and whether his initial State habeas attorney was ineffective. *Id.*

The Fifth Circuit has summarized the application of the rule announced in *Martinez* and *Trevino* as follows:

> To succeed in establishing cause to excuse the procedural default of his ineffective assistance of trial counsel claims, [petitioner] must show that (1) his underlying claims of ineffective assistance of trial counsel are "substantial," meaning that he "must demonstrate that the claim[s] ha[ve] some merit," *Martinez*, 132 S. Ct. at 1318; and (2) his initial state habeas counsel was ineffective in failing to present those claims in his first state habeas application. *See id.*; *Trevino*, 133 S. Ct. at 1921.

*Preyor v. Stephens*, 537 F. App'x 412, 421 (5th Cir. 2013). "Conversely, the petitioner's failure to establish the deficiency of either attorney precludes a finding of cause and prejudice." *Sells v. Stephens*, 536 F. App'x 483, 492 (5th Cir. 2013). The Fifth Circuit subsequently reaffirmed this basic approach in *Reed v. Stephens*, 739 F.3d 753, 774 (5th Cir. 2014).

The Supreme Court specified that the *Strickland*[3] standard applies in assessing whether counsel was ineffective. *Martinez,* 566 U.S. at ___, 132 S. Ct. at 1318. In order to show that counsel was ineffective, a petitioner must demonstrate the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that . . . counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. To establish deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness," with

---

[3] *Stickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688, 104 S. Ct. at 2064. The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.* at 690, 104 S. Ct. at 2066. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697, 104 S. Ct. at 2069.

**2. Mr. Cantu has not demonstrated ineffective assistance of counsel at the guilt/innocence stage of the trial.**

The first issue for the court's consideration is whether Mr. Cantu's underlying claim of ineffective assistance of trial counsel is substantial, meaning that he must demonstrate that it has some merit. Mr. Cantu argues that his trial counsel was ineffective for failing to independently investigate the State's case for guilt. As previously described, Mr. Goeller's affidavit addressed this issue in detail. Counsel reviewed the evidence of guilt and concluded that it was overwhelming. *See* Memorandum, Exhibit B (Dkt. #10-4), page 6. Moreover, Mr. Cantu admitted to counsel that he had killed Mosqueda for "ripping him off" and that he killed Kitchen because she happened to be there and he did not want to leave any witnesses. *Id.* at 9. In light of the evidence of guilt known to trial counsel Mr. Goeller and Mr. High, they chose to focus on trying to defeat the future dangerousness special issue. *Id.* at 6.

The Supreme Court has stressed that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices

made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 690–91, 104 S. Ct. at 2066. A decision not to investigate "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691, 104 S. Ct. at 2066. In *Strickland*, the Supreme Court found that the decision to forego pursuing additional evidence was reasonable in light of the evidence known to counsel. *Id.* at 699, 104 S. Ct. at 2070–71. Counsel is not required to "pursue an investigation that would be fruitless, much less one that might be harmful to the defense." *Harrington v. Richter*, 562 U.S. 86, 108, 131 S. Ct. 770, 789–90 (2011). The Fifth Circuit has regularly approved of informed trial strategies foregoing additional investigations. *See, e.g., Ward v. Stephens*, 777 F.3d 250, 264–65 (5th Cir. 2015); *Hoffman v. Cain*, 752 F.3d 430, 446 (5th Cir. 2014); *Skinner v. Quarterman*, 576 F.3d 214, 220 (5th Cir. 2009); *Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000).

In the present case, Mr. Goeller has set out a detailed, reasonable, and informed trial strategy of focusing on the future dangerousness special issue. He and co-counsel Mr. High conducted a thorough investigation and arrived at the rational conclusion that the evidence of guilt was overwhelming. At some point this was confirmed when Mr. Cantu admitted that he had murdered the victims. The strategic choice to forego pursuit of ephemeral evidence of actual innocence was reasonable in light of the evidence known to trial counsel.

The allegations Mr. Cantu presents concerning trial counsels' ineffectiveness are not based on any new evidence that has been, or might reasonably have been, discovered. Rather there is a litany of criticism as to how evidence on the record might have been addressed differently on cross examination or in final argument. None of these complaints implicate any

11

tactical choice that is even close to being outside of the "wide range of reasonable professionally competent assistance." *See Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

Mr. Cantu also complains that counsel conceded guilt in final argument, arguing only that he was technically not guilty of capital murder. 41 RR 31 ("I didn't say he was innocent. I said he's not guilty of capital murder."). The Fifth Circuit has regularly rejected ineffective assistance of counsel claims where attorneys employed a trial strategy conceding guilt. *Haynes v. Cain*, 298 F.3d 375, 382 (5th Cir. 2002) (partial concession of guilt was a strategy that "proved effective in avoiding the death penalty for their client"); *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) ("counsel's tactic may have been the best available"); *Kitchens v. Johnson*, 190 F.3d 698, 704 (5th Cir. 1999) (conceding to murder and arguing in closing that the defendant had committed a "very brutal, a very savage murder, but [] not a capital murder . . ." was a valid strategic decision "in an effort to bolster his credibility with the jury"). In the present case, counsel's strategy was quite similar to the strategy employed in *Kitchens,* the last of these three cases. In that case, the Fifth Circuit stressed that counsel's closing argument was a strategic decision which "we will not second guess." *Kitchens*, 190 F.3d at 704.

This court will not second guess counsel's informed trial strategy. Overall, Mr. Cantu has not shown that the trial strategy employed by counsel was unreasonable. The court finds that Mr. Cantu has not demonstrated that trial counsel's performance was deficient regarding the issue of actual innocence.

Mr. Cantu likewise failed to satisfy the prejudice prong. Both this court and the Fifth Circuit analyzed the evidence presented by him that purportedly showed his innocence. The Fifth Circuit rejected the claim as follows:

> Cantu claims that his trial counsel rendered ineffective assistance by failing to investigate evidence of his factual innocence and present it at trial. In particular, he points to three

factual inconsistencies that were admitted into evidence at trial: (1) telephone records indicated that someone made a phone call from Cantu's apartment on the night after the murder when he and Boettcher were in Arkansas; (2) toll tag records indicated that someone drove Mosqueda's Corvette at 11:15 a.m. on November 4, even though Boettcher claimed the last time they drove the car was at 6:30 a.m.; and (3) the State's blood-splatter expert testified, based on photos of the crime scene, that Kitchen had been kicked or punched in the face, while the doctor who performed the autopsies found no evidence of injuries to the victims apart from the gunshot wounds. Cantu does not specifically explain, however, how this evidence proves his innocence by a preponderance of the evidence, and the district court pointed out that there are rational explanations of these inconsistencies that reasonable jurors could accept[.]

*Cantu v. Thaler*, 632 F.3d at 165 (internal citations omitted). The opinion proceeded to quote Judge Ward's explanation, which was discussed at page seven of this memorandum.

The Fifth Circuit's opinion went on to reject Mr. Cantu's claim that his attorney's performance was deficient: (1) by failing to interview Mr. Cantu's ex-girlfriend, at whose apartment police found the murder weapon; (2) by failing to question State witnesses as to whether Mr. Cantu's face was indeed swollen and Boettcher's hand was indeed injured, as she testified; and (3) by conceding Mr. Cantu's culpability for the murders during closing argument. *Id.* at 166. "These claims, however, do not constitute 'reliable evidence,' let alone new evidence, and therefore also cannot support a *Schlup*[4] claim of actual innocence . . ." *Id.* Consequently, the issue of whether Mr. Cantu's evidence shows actual innocence has already been considered and rejected. The actual innocence analysis employed by both this court and the Fifth Circuit is, in effect, the same analysis to employ with respect to the prejudice prong. Mr. Cantu has not shown that any deficient representation on the part of his attorney with respect to this evidence resulted in prejudice.

In light of the foregoing, the court concludes that Mr. Cantu has not shown an underlying claim of ineffective assistance of counsel at trial that is substantial in order to establish cause to excuse the procedural default.

---

[4] *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851 (1995).

**3. Mr. Cantu has not demonstrated that State habeas corpus counsel was ineffective.**

Under *Martinez* and *Trevino*, Mr. Cantu has the additional burden of establishing that his initial State habeas corpus counsel was ineffective for failing to present the claim of ineffective assistance of counsel at trial in his State application. But "petitioner's failure to establish the deficiency of either attorney precludes a finding of cause and prejudice." *Sells*, 536 F. App'x at 492. This court's finding that Mr. Cantu has not shown an underlying claim of ineffective assistance of counsel at trial that is substantial, standing alone, precludes a finding of cause and prejudice. Nonetheless, the court shall address the issue of ineffective assistance of habeas counsel since it has been developed by Mr. Cantu.

Mr. Cantu complains that his habeas counsel filed his application for a writ of habeas corpus in State court without discussing it with him. He added that counsel met with him only once. He complains that the application only challenged the death sentence, not the conviction itself. Mr. Cantu once again alleged that trial counsel rendered ineffective assistance by failing to investigate and present evidence of his actual innocence. He argued that the omission of this claim amounted to deficient performance; and absent such omission, there is a reasonable likelihood he would have been granted relief. But, State habeas counsel had access to the record, and the record revealed that the evidence of guilt was overwhelming. State habeas counsel was not required to raise frivolous or futile arguments. *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002); *Koch*, 907 F.2d at 527 (both cases concerning frivolous or futile motions during trial).

In the context of direct appeals, the Supreme Court has stressed that an indigent defendant does not have a constitutional right to require counsel to press every nonfrivolous point requested by the client if counsel, exercising professional judgment, decides not to present

that point; instead, an appellate attorney's duty is to choose among potential issues, using professional judgment as to their merits. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 3312 (1983). Mr. Cantu has not shown actual innocence and thus has not satisfied *Strickland*'s prejudice prong. The evidence before the court does not support a finding that State habeas counsel was ineffective for failing to present this particular claim of ineffective assistance of trial counsel.

Mr. Cantu has not shown that either his trial counsel or his initial State habeas counsel were ineffective in order to excuse the procedural default.

**4. Alternatively, since this court and the Fifth Circuit previously considered and rejected Mr. Cantu's claim of actual innocence, reconsideration under *Martinez* is not warranted.**

Alternatively, the petition should be denied for yet another reason advanced by the Director. He argues that Mr. Cantu has already received the relief available to him under *Martinez*. *See* Brief (Dkt. #57), pages 10-16. "A finding of cause and prejudice does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted." *Martinez*, 566 U.S. at ___, 132 S. Ct. at 1320. Where a federal court has addressed the merits of an otherwise defaulted claim, the petitioner has arguably received all of "the relief available to him under *Martinez* and *Trevino*." *Preyor*, 537 F. App'x at 422.

More recently, the Fifth Circuit addressed this issue as follows: "As a practical matter, we also observe that although the district court did not review Reed's ineffective assistance claims under *Martinez*, the district court did review Reed's assertions of actual innocence, which included much of the evidence Reed relies on to show that his counsel acted deficiently." *Reed*, 739 F.3d at 774 n.11.

In the present case, Mr. Cantu is bringing an ineffective assistance of trial counsel claim as a vehicle for presenting an argument that he is actually innocent of the crime. He cites *Martinez* and *Trevino* in an effort to overcome the procedural default. Nonetheless, both Judge Ward and the Fifth Circuit considered and rejected his assertions of actual innocence. Judge Ward reviewed the evidence and arguments that Mr. Cantu's claims were not properly utilized before the state trial court to establish Mr. Cantu's actual innocence. Judge Ward found "that even with this evidence, a rational juror could have found beyond a reasonable doubt that Cantu was guilty of killing Mosqueda and Kitchen." *Cantu v. Quarterman*, 2009 WL 728577, at *10. As such, Mr. Cantu was not permitted to return to the Texas Court of Criminal Appeals because it was "entirely clear that the state court would refuse to consider the merits of this claim if it were presented in a successive state petition for post-conviction relief." *Id.*

The Fifth Circuit found that the "court was correct in its conclusion." *Cantu v. Thaler*, 632 F.3d at 166. So both this court and the Fifth Circuit rejected his claims based on actual innocence. Although his ineffective assistance of trial counsel claim was not reviewed under *Martinez*, both courts reviewed his assertions of actual innocence, which includes much of the evidence he relies on to show that his trial counsel was ineffective. Mr. Cantu has already been given all of the relief made available by *Martinez* and *Trevino*- a review of his actual innocence claim on the merits. No other relief is available. Mr. Cantu is not entitled to federal habeas corpus relief on this matter, and the petition should be denied.

## IV. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a federal habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Mr. Cantu has not yet filed a notice of appeal, the court may

address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). "When [a] district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604.

In this case, reasonable jurists could not debate the denial of Mr. Cantu's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003) (citing *Slack*, 529 U.S. at 484). The court thus finds that Mr. Cantu is not entitled to a certificate of appealability as to his claims.

17

## V. CONCLUSION

The record establishes that Mr. Cantu's trial counsel were well experienced and had a considered and rational trial strategy for presentation of a defense to avoid the death penalty in light of the overwhelming evidence of Mr. Cantu's guilt. There is no showing of any error or omission of state counsel at the trial or habeas phases that remotely approaches the *Strickland* standard for ineffective assistance of counsel. The evidence Mr. Cantu claims was not presented to the jury is in the trial record. Even considering that evidence, a rational juror could be convinced of Mr. Cantu's guilt beyond a reasonable doubt.

Having carefully considered the claim remanded by the Fifth Circuit, this court finds that Mr. Cantu has not shown that he is entitled to federal habeas corpus relief and his petition should be denied. It is accordingly

**ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the case is **DISMISSED** with prejudice. It is further

**ORDERED** that a certificate of appealability is **DENIED**. It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **15** day of **June, 2016.**

_____
Ron Clark, United States District Judge